## MURPHY v. THE CITY COUNCIL OF MONTGO-MERY.

1. The act of 1829, incorporating the Montgomery Wharf and Steamboat Company, did not confer any proprietary rights on the company, but merely authorized them to exact tolls on the landing of goods at their wharf.
2. The city of Montgomery, as an incident of its rights of property in a wharf, may collect toll or wharfage from those landing there, but from the interest the public have in the matter, the toll may be regulated by law.
3. The right to a franchise may be tried by an action of assumpsit for money had and received, by one usurping the franchise and collecting the tolls.

Error to the Circuit Court of Montgomery.

Assumpsit by the defendant, against the plaintiff in error, for money had and received.

Upon the trial, as appears from a bill of exceptions, it was proved that on the 1st July, 1823, the town council of Montgomery, executed a lease of a site for a wharf to Goodhall & McGehee, which by a subsequent agreement was extended to the 1st January, 1845. This lease was afterwards conveyed by them to John Gindrat and others. The defendant

then read in evidence, an act of the legislature passed the 29th January, 1829, incorporating the said individuals by the style of the Montgomery Wharf and Steamboat Company, of whom Justus Wyman was one, and whose interest was purchased by the plaintiff in error, which interest he held on the 1st January, 1845, and retained possession thereof until 5th May, 1845, collecting wharfage and tolls, and that of the sum collected, near one thousand dollars was received by him before the 5th May, 1845. The charter of the town of Montgomery was also in evidence.

This being all the testimony, the court instructed the jury, that if they believed all the evidence, they must find for the plaintiff, the amount of money collected after the 1st January, 1845.

The defendant moved the court to charge, that the city council had no right to collect wharfage at any wharf in said city, and that if the defendant collected the money as wharfage, then the plaintiff could not recover.

This the court refused, and the defendant excepted to the charge given, and to that refused, and now assigns it as error.

BELSER, for plaintiff in error.

1. The city council of Montgomery could only exercise the powers given to it by the legislature, and the charter gives the corporation the right to *regulate* wharfage, not to *collect* it. [See act of incorporation of 1837, pp. 54-5-6.]

2. The right to collect wharfage was a franchise vested in the Montgomery Wharf and Steamboat Company by the act of the legislature of 1829, of which corporation the plaintiff in error was a member. [See act of incorporation of 1829, p. —; 3 Kent's Com. 5th ed. pp. 458-9; see 1 vol. Lom. Dig. 534-5.]

3. If the plaintiff in error collected the money as agent for the defendant in error, he was not liable to be sued until a demand of the money was made. [See Sally's Adm'r v. Capps, 1 Ala. 121.]

4. There is no count in the declaration for use and occupation, and a landlord cannot recover for use and occupation except on a count *framed* for the purpose. [See 1 Chitty's Plead. 342; 2 Saund. Rep. 350, n. 2.]

5. The action for use and occupation does not lie except upon a demise, or when the relation of landlord and tenant exists. [See Bell v. Ellis' Heirs, 1 Stew. & P. 294.]

6. The court could not presume a contract creating the relation of landlord and tenant, because the suit was brought before the expiration of the year 1845, and the wharfage was received under a title *adverse* to the defendant in error. [See 4 Kent's Com. 5th ed. 112; Chit. on Con. 370; 4 Phil. Ev. C. & H's Notes, 169; 1 Term, 159; 1 Raymond, 707; 11 Pick. 9; 6 Johns. 46; 1 Wend. 134.]

7. No general charge that " the one or the other party is entitled *to* a verdict is proper, when there is any conflict of proof." [See Browning & Co. v. Grady's Adm'r, at this term.]

ELMORE and J. D. F. WILLIAMS, contra.

1. Money paid under a mistake of law, by one but with a full knowledge of the facts, or with the means of such knowledge within his reach, cannot recover it back. [Clark v. Dutcher, 9 Cow. 674, 681; Ladd v. Kenedy, 2 N. H. 341; Jones v. Watkins, 2 Stew. 81.]

2. Where an agent collects money for his principal, upon an illegal contract, the principal and not the agent will be entitled to it. [Elliot v. Swartwert, 10 Peters, 137; Tennant v. Elliott, 1 Bos. & Pul. 3; Farmer v. Russell, 1 Id. 296.]

3. An implied agency may be created by the acquiescence of the principal in the acts of the agent. [Story on Agency, § 54.]

ORMOND, J.—The action is brought to recover money received by the plaintiff in error, to the use of the defendant, and the true question is, whether the wharf and steamboat company, or the city authorities of Montgomery, are entitled to the wharfage or toll paid for unlading at the wharf, since the 1st January, 1845.

It appears very conclusively from the evidence, that the title to the wharf is in the city of Montgomery, and that the possessory right of the company ceased on the 1st January, 1845. This appears from the lease executed by the city au-

thorities, which estops those claiming under it from denying the title of the city authorities.

It is however contended, that the act incorporating the Montgomery Wharf and Steamboat Company, which passed in January, 1829, secured to them the enjoyment of this franchise until 1849. The design of that act was to incorporate the individuals there named, and to authorize them, among other things, to exact certain tolls or rates of wharfage on all goods landed at the wharf at Montgomery. But it was not the design of the legislature to confer on the company proprietary rights in the soil, but only to give them the exclusive privilege of collecting wharfage on their own property. This is not left to implication, as the fifth section giving the power to collect wharfage, contains the following proviso : " Provided, always, that the said corporation shall have no right to receive wharfage, until they become possessed of the present wharf and landing in the said town, and *only during their continuance in possession of the same.*" It is therefore very clear, that when their right to the possession of the wharf ceased, as it did on the first January, 1845, their right also ceased to collect tolls there.

It is further urged, that the city council has no right to collect toll at this wharf, because there is no provision in its charter authorizing it to do so. We infer from the deed found in the record leasing this wharf to those under whom the defendant claims, that the title to the wharf is in the city, and such being the fact, it had the same right as any other proprietor, to collect wharfage from those landing goods there. This right resulting from its proprietary interest, is not a franchise, but a right of property. It is true, that as this is a matter which affects the public, the legislature may regulate its exercise, by declaring what tolls or wharfage an individual shall be allowed to receive ; but this does not make the right a franchise, but is merely a restraint upon the exercise of one of the rights of property.

The customary mode in England of trying the right to an office, is by bringing this action for the fees collected by one who has usurped it, and by showing himself entitled to the office, he establishes his right to the fees collected during the usurpation. [Green v. Hewit, Peake, 182 ; Rex v. Bishop

of Chester, 1 Term, 403, and Powell v. Milbank, note to the same case.]

It is not however necessary to inquire, whether the right to the possession of the wharf, could be tried in an action for money had and received, for it appears that the possession was yielded to the city council on the 5th May, 1845; and it is then the naked case of one receiving money, which of right belongs to another, and which the law considers as having been received to his use, and implies a promise to pay on request.

From these considerations, it follows that the action is well brought, and sustained by the proof.  Let the judgment be affirmed.