# City of Demopolis *v.* Webb.

*Bill in Equity by Municipal Corporation, for Injunction against Obstruction of Street and River Landing.*

1. *Dedication of streets in city or town.*—If the owners of a tract of land have it surveyed and mapped out as a town, with streets dividing the blocks or squares, and each block sub-divided into lots, and sell off lots by their numbers and description on the map, this is a dedication of the several streets to the public, leaving the ultimate fee in the original proprietors.

2. *Acceptance of dedicated street.*—A legislative act incorporating a town as laid out by the proprietors of the land, declaring that "all the tract of land included in the plan of said town be and is hereby declared to be the limits of the same in conformity to said plan," is an adoption of the plan as a part of the charter; and an acceptance of the charter operates as an acceptance of the dedicated streets therein laid down, without further action on the part of the municipal authorities.

3. *Estoppel against denying dedication.*—A sub-purchaser of a lot in an incorporated city or town, described in his conveyance as fronting on a named street, according to the map and plat laid out by the original proprietors of the land, is estopped from denying the dedication of the street as a highway, and its acceptance as such by the proper authorities.

4. *Obstruction of street in city or town; legal and equitable remedies.* The obstruction of a street in an incorporated city or town, although under claim of title to the soil, is an indictable nuisance, for which an action lies in favor of any person sustaining special damage; and a bill in equity may also be maintained by the city or town, to restrain its continuance, and abate it as a nuisance.

5. *Fee in streets of city or town.*—In the absence of statutory provisions to the contrary, a conveyance of a lot in an incorporated city or town, bounded by a public street, passes to the grantee the fee to the center of the street, subject to the public right of user; the fee to the other half remaining in the grantor, or original proprieter, and with it all riparian rights when the street is bounded by a navigable river.

[City of Demopolis v. Webb.]

6. *Right to collect wharfage.*—A right to collect wharfage may exist (1) as a franchise conferred by legislative grant, or (2) as an incident to the ownership of lands abutting on a navigable river, subject to reasonable legislative regulation; and where such proprietary rights existed prior to the adoption of the constitutional provision which has been of force since 1868 (Const. 1868, 1875, Art. I, § 26), and it has not been dedicated to the public, it can not be taken away by legislative enactment, without compensation to the owner.

7. *Injunction against collection of wharfage.*—An incorporated city or town can not maintain a bill in equity, to enjoin the collection of wharfage by a person who claims under the original proprietors of the land which was laid out into a town, without showing (1) that the user of the street abutting on the river is thereby obstructed, or (2) that the right to collect wharfage was dedicated to the public with the street, or (3) otherwise negativing its retention by the proprietors.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 11th June, 1888, by the "City of Demopolis," against John C. Webb and wife, and W. H. Creagh; and sought (1) to enjoin the continuance of a fence, which said Webb had erected across a part of Arch street near the river; and (2) to prevent the collection of wharfage by the defendants, at their landing on the river at or near the foot of said street. The chancellor held, on demurrer, that the bill contained equity, so far as it sought relief against the obstruction of the street by the fence, but not as to the collection of wharfage; and that there was a misjoinder of defendants, inasmuch as Webb alone was charged with the erection and continuance of the fence. Each party appeals from this decree, and assigns as error the rulings against them respectively.

GEO. G. LYON, and with him PETTUS & PETTUS, for complainants.—(1.) The bill clearly shows a dedication of Arch street to the public.—2 Smith's Lead. Cases, 6th Amer. ed., 224, mar. 209; *Godfrey v. Alton*, 12 Ill. 29; 52 Amer. Dec. 476; 18 Ohio, 18; 8 B. Mon. 237; 8 Wend. 85; 11 Wend. 486; 1 Hill, 190; 6 Hill, 407; 33 Amer. Dec. 267. The legislative charter shows a sufficient acceptance of the dedication.—2 Dill. Mun. Corp. 640, § 642 (505), note 1; *Desmoines v. Hall*, 24 Iowa, 234; *Requa v. Rochester*, 45 N. Y. 129; 22 Ala. 197. (2.) The defendants are estopped from denying the fact of dedication.—2 Dill. Mun. Corp., § 639 (494), note 3; 19 Ohio St. 238. (3.) The bill charges acts which constitute a public nuisance, and for which an action at law would lie in favor of any person sustaining special injury; but a court of equity will also inter-

[City of Demopolis v. Webb.]

fere by injunction, at the suit of the city.—2 Dill. Mun. Corp., §§ 659 (520), 660; *State v. Mayor*, 5 Porter, 279; *Hoole v. Att'y Gen.* 22 Ala. 195; 57 Ill. 283; 76 Ill. 231; 10 Bush, Ky. 288; 56 Ill. 451; 3 Paige, 210; 4 Paige, 510; Eden on Injunctions, 259–65; 2 Story's Equity, §§ 923–4; Mitf. Eq. Pl. 144–5;. 3 Zabr. N. J. 712; 6 Paige, 133, 555; 3 Pom. Equity, § 1349; 6 John. Ch. 439; 3 Paige, 254; 10 Ala. 47. The jurisdiction of chancery is not taken away by the provision of the charter giving the municipal authorities power to abate nuisances summarily.—*Hoole v. Att'y Gen.* 22 Ala. 195; *Watertown v. Cowen*, 4 Paige, 510; *Cincinnati v. White*, 6 Peters, 431; 2 John. Ch. 371; 6 *Ib.* 439; 5 Vesey, 129. (4.) Arch street, as dedicated, extends to low-water mark, and includes the lower landing; and this gives the city all the rights of any other riparian owner. *Barney v. Keokuk*, 94 U. S. 324; 10 Peters, 663. (5.) The defendants are not riparian proprietors, though they may own the fee to the center of the street in front of their lots.—Gould on Waters, § 148; 2 Wall. 57; 67 N. Y. 512; 14 Allen, 145; 80 Penn. St. 119; 2 Minn. 114; 55 Ill. 486; 59 Ill. 196; 14 Iowa, 1; 18 Iowa, 179; 16 Wisc. 509; 18 Wisc. 118; 18 Wall. 57; 79 Amer. Dec. 288. (6.) The bill is not multifarious, nor is there any misjoinder of defendants.—*Lehman v. Mayer*, 67 Ala. 396; *Kennedy v. Kennedy*, 2 Ala. 573; *Anderson v. Jones*, 68 Ala. 117; 1 Dan. Ch. Pl. 335; Story's Eq. Pl., §§ 284, 533; 23 Ala. 558; 47 Ala. 273; 79 Ala. 76.

Geo. W. Taylor, *contra.*—(1.) The remedy at law is adequate and complete, (1) by ejectment, or (2) by statutory proceedings in the nature of *quo warranto.*—2 Dill. Mun. Corp., § 662; 79 Amer. Dec. 284; 9 *Ib.* 284; 69 *Ib.* 664; 64 N. Y. 75; Code, 1886, §§ 3170–71. (2.) It is only streets in actual use, not speculative or projected streets, the obstruction of which amounts to a nuisance.—2 Dill. M. C. § 680; 6 Mich. 176; 9 Mich. 111; 1 Amer. Dec. 647; 77 Amer. Dec. 491, note. (3.) To perfect a dedication of land, acceptance is necessary, and use is essential.—*Gage & Co. v. Railroad Co.*, 84 Ala. 224; 88 Mo. 155; 10 Amer. Dec. 218; 91 *Ib.* 542, note; 1 *Ib.* 647. Dedication is a contract, and requires a grant by one party, or its equivalent, and acceptance or user by the other.—88 Mo. 155. While a reasonable time will be allowed for acceptance (48 Miss. 423; 31 Conn. 308), it will scarcely be presumed after the

[City of Demopolis v. Webb.]

lapse of sixty years, in the absence of user. The bill alleges that the road leading to the landing was established in 1871,— less than twenty years before the bill was filed; and user for less than twenty years, without more, does not constitute a highway.—68 Ala. 48; 84 Ala. 224. (4.) The bill should have alleged that it was a free public wharf, since a wharf, or landing, may be public in its use, and yet remain private property.—1 Dill. 104; 1 Black, 1; 72 Amer. Dec. 365. There can be no free public wharf, unless there is a public road leading to it.—47 Amer. Dec. 548. (5.) The real object of the bill is to get possession of the lands alleged to be a street and landing, and the controversy is simply a dispute as to the legal title, Webb being in possession under claim of title.—5 Porter, 279, 316; 64 Ala. 249; 66 Ala. 64; 3 Brick. Dig. 350, § 264. (6.) The right to charge and collect wharfage is a riparian right, incident to ownership, or a legislative franchise, and subject to legislative control. 11 Ala. 586; 1 Black, 1; 21 Amer. Dec. 89–95. A municipal corporation has no right to regulate or control wharves, except when authorized by its charter.—53 Ala. 561; 1 Dill. 103. Under the allegations of the bill, the complainant never acquired any title to the wharf, or landing, but it remained in the original proprietors.—2 Dill. 629, 632, 648; 55 Ala. 413. Wharves, landings, &c., are not public nuisances, unless they impede or obstruct navigation.—1 Dill. M. C. 106; 21 Amer. Dec. 89–95; 95 *Ib.* 495, 644, 653; Gould on Waters, § 140. (7.) Under the allegations of the bill as to the collection of wharfage, the defendants were guilty of usurping a franchise; of which only the State can complain, and the remedy is by statutory proceedings in the nature of *quo warranto.*—Code, §§ 3170–71; 45 Amer. Dec. 500. (8.) The bill is objectionable for multifariousness, and for misjoinder of parties.—72 Ala. 302–07; 77 Ala. 278–81.

SOMERVILLE, J.—The bill is filed by the City of Demopolis, a municipal corporation, to restrain the continuance of a fence erected by John C. Webb, one of the defendants, across Arch street, a highway in said town, said obstruction being alleged to be a public nuisance, and sought to be abated as such. The bill further seeks to restrain the alleged unlawful collection of wharfage by the said Webb and his co-defendants, at a steam-boat landing on the margin of the Tombigby river, which is averred to be an appropriation of

a part of said street, and an obstruction to the free use of said landing by the public. The highway in question—called Arch street—is alleged to be on the east margin of the river, running north and south, and extending from the low-water mark to the lots on the west side of the street, which are marked out and numbered on the map of the city. Said street is also designated on this map, and is alleged to have been duly dedicated to the public use.

There was a demurrer to the bill, some grounds of which were sustained, and others overruled. The case comes before us on cross-appeals by both the complainant and the defendants. We have been greatly enlightened in the investigation of this case by the able arguments of counsel, in which great research is displayed.

It is objected, among other things, that the allegations of the bill fail to show that Arch street was ever laid off, or opened as a street, and in use as such prior to the alleged obstruction. In answer to this we may observe, that the bill alleges with sufficient certainty a dedication of the street to the public use, and the acceptance of such dedication by the city authorities; and the defendants occupy an attitude which estops them from denying the existence of this street as a municipal highway. The dedication itself was made by the owners of the soil, in the clearest and most unmistakable manner, by surveying and mapping out a town, under the name of the town of Demopolis. This town they laid off into streets, blocks and lots, naming the streets, and numbering the lots, by marking them on this map or plat. Among these recognized highways was Arch street, the one here in controversy. The lots in said town were all described and sold with reference to this plat, including certain lots occupied by the defendant Webb, adjacent to, or fronting on Arch street, upon which a ware-house has been constructed by the proprietors, his co-defendants, from whom said Webb rents the premises. Improvements have been made, and a town built up with reference to this plat, and upon the faith of an implied covenant on the part of the dedicators that the highways and streets described shall always remain open for public use. "It may be stated as a general rule," as observed in a recent leading case, "that where the owner of urban property, who has laid it off into lots, with streets, avenues and alleys intersecting the same, sells his lots with reference to a plat in which the same is so laid off; or where, there being a city map on which this land is so laid off, he adopts

such map by reference thereto, his acts will amount to a dedication of the designed streets, avenues and alleys to the public."—*M. E. Church v. Mayor of Hoboken*, 33 N. J. Law, 13; s. c., 97 Amer. Dec. 696. Under all the authorities, and upon every sound principle, this was a dedication of Arch street, as described on the map.—*City of Dubuque v. Maloney*, 9 Iowa ,451; s. c., 74 Amer. Dec. 358; *Cincinnati v. White*, 6 Pet. 431; *Godfrey v. City of Alton*, 12 Ill. 29; s. c., 152 Amer. Dec. 476; *Gardner v. Tisdale*, 60 Amer. Dec. 407; Angell on Highways, sec. 149.

The acceptance of the dedication by the public is sufficiently alleged. The act of the General Assembly of Alabama, approved December 15th, 1821, incorporating the town of Demopolis, provided, that "all the tract of land included in *the plan of said town* be, and is hereby, declared to be the limits of the same *in conformity to said plan*." Toulmin's Dig. p. 837. This was an adoption of the plan, or map, as part of the charter, with its streets there marked out and dedicated; and the acceptance of the charter operated, *ipso facto*, as an acceptance of such dedication, without further action on the part of the municipal authorities.—*Requa v. City of Rochester*, 45 N. Y. 129. The bill, moreover, alleges the actual use by the public, for over twenty years, of portions of Arch street near the two steamboat landings, in or adjacent to this street on the river margin.

But, as we have said, the defendants are in no situation to assert the non-existence of Arch street as a dedicated and accepted highway. They claim title to their lots by mesne conveyances running back to the original dedicators and proprietors—the same source through which the complainant derives its title to the street in controversy. In these conveyances, the lots on which the ware-house property is situated are described with reference to the original map or plat of the town, and stated to be bounded on the north by *Arch street* and Washington street. This estops the defendants from denying that Arch street is a public highway, having potential existence, whether actually opened or not. The case of *Providence Steam Engine Co. v. Providence Steamship Co.*, 12 R. I. 348; s. c., 34 Amer. Rep. 652, is an authority in support of this view. There, a riparian owner platted his land into streets, lots and squares, one of the streets being below high-water mark, and under tide-water at the time of dedication, having been subsequently reclaimed by filling out the uplands. It was closed by the owners of

the adjoining lots, through the erection of a fence across the street. A bill was sustained to remove this obstruction as a nuisance. To the suggestion of the respondents that the street was never lawfully created, but existed only on paper, because the land over which it ran was overflowed by tide-water, the court answered: "Though it may be true that the way or street had no actual existence when the conveyance under which it is claimed was made, we think it had never-theless what may be called a potential, or prospective exist-ence, which would become actual whenever the place for it should be filled and incorporated with the upland; and though the conveyances, when executed, may have been ineffectual to create the way or street, because the site of it was flowed by tide-water, yet we think they were binding by way of estoppel on parties and privies, so that, in equity, at least, the said parties and privies could not refuse to allow the way or street as soon as the land designated for it became capable of supporting it. The ground of the estoppel," said the court, "is, that the easements and servitudes indicated by the plat constitute a part of the consideration for which all the conveyances referring to the plat were made; and therefore no person, while claiming under the conveyances, can be permitted to repudiate them, or to deny that they ex-ist where they are capable of existing." We fully indorse this view of the law, as sustained both by reason and au-thority.—*City of Dubuque v. Maloney,* 74 Amer. Dec. 358; *Godfrey v. City of Alton,* 52 Amer. Dec. 476; *Van O'Linda v. Lothrop,* 21 Pick. 292; s. c., 32 Amer. Dec. 261.

It follows, we repeat, from this principle, that it is imma-terial whether the street in question had been opened and used all its length through or not. The defendants pur-chased their lots in full recognition of its existence as a pub-lic street, or municipal highway, liable to be opened and used as such whenever the growing demands of an increased population and commerce might require it. They are es-topped now to deny to it this character, upon the plainest principles of justice and right.

It is well settled, that a fence, or other like obstruction, erected across a street is a public nuisance; and it may be such although the obstruction is created under an accom-panying claim of title to the soil. A right of action at law will lie for its maintenance, in favor of any one who may sustain from it a special or particular injury. For such nuisance an indictment will also lie, and any private person

aggrieved by it may rightfully abate it by removal.—*Stetson v. Faxon*, 31 Amer. Dec. 123, and note p. 132; *Davis v. Mayor of New York*, 67 Amer. Dec. 186, note p. 203; *Harrower v. Ritson*, 37 Barb. (N. Y.) 303; *Milarky v. Foster*, 25 Amer. Rep. 531.

Chancery, however, will often assume jurisdiction to abate such a nuisance, by preventing its continuance through the aid of an injunction, where the fact of its existence is undoubted. This will be done, either on the ground of the irreparable nature of the injury, or to prevent a multiplicity of suits liable to be occasioned by its repetition or continuance, or other grounds which render the remedy at law inadequate. The disturbance of easements, existing or threatened, will especially be restrained with much favor.—3 Pom. Eq. Jur. §§ 1350–1351. Acting on these principles, this court in *State v. Mayor & Aldermen of Mobile*, 5 Port. 279; s. c., 30 Amer. Dec. 564, (1837) authorized an injunction to issue, restraining the erection of a market-house in one of the public streets of the city of Mobile, which was pronounced to be such an obstruction in the highway as to constitute a nuisance. A like jurisdiction exists to abate a nuisance already created, the remedy at law being inadequate, on the ground that one action, or even several, may not be sufficient to redress the plaintiff's grievances, by reason of the continuous nature of the injury. An appeal to the Chancery Court, moreover, is a more orderly method of settling such disputes, being less apt to lead to breaches of the peace, than the dangerous attempt to redress one's rights by taking the law in one's own hands.—*Town of Burlington v. Schwarzman*, 52 Amer. Rep. 571; *Hoole v. Attorney-General*, 22 Ala. 190; *Providence Steam Engine Co. v. Providence Steamship Co.*, 34 Amer. Rep. 652; *Dumesnil v. Dupont*, 68 Amer. Dec. 750.

That the city of Demopolis has the right to bring this suit is, in our judgment, clear, on both authority and principles of reason. Such jurisdiction was recognized and asserted long ago, by the English Court of Chancery, in *Mayor &c. London v. Bolt*, 5 Ves. 129, where an injunction was granted on the application of the corporate authorities of the city of London, to prevent a nuisance which threatened to be dangerous to the lives of the citizens.

In *Trustees of Village of Watertown v. Cowen*, 4 Paige Ch. 510; s. c., 27 Amer. Dec. 80, it was decided that the village of Watertown, in its corporate capacity, was so far the representative of the equitable rights of the inhabitants,

[City of Demopolis v. Webb.]

as to authorize the filing of a bill in its name to restrain the erection of buildings on a public square, which were declared to be a public nuisance, and liable to be abated as such,

So, it was held in *Town of Burlington v. Schwarzman*, 52 Conn. 181; s. c., 52 Amer. Rep. 571, that one who unlawfully erects a fence across a public street in a town, and threatens to maintain it, could be restrained by injunction at the suit of the town. The court, among other reasons, thought that the liability of the town to pay damages, in case of a person being injured by the obstruction, a sufficient interest to enable it to appear as plaintiff in a complaint in equity to prevent the threatened destruction. An equally good reason is found in the power and duty to prevent and remove nuisances, and to keep a general control of, and supervision over all municipal highways, as incidental to the right to repair and improve streets, to say nothing of the express power in the city charter "to open all streets as laid down on the maps of said city."—City Charter, Acts 1872–73, pp. 305, 310–311, § 19; *M. E. Church v. Mayor of Hoboken*, 97 Amer. Dec. 698; note, 707; *Inhabitants of Greenwich v. E. & A. R. R. Co.*, 24 N. J. Eq. 221. There would be a great defect of justice, if the governing authorities of a town or city, charged as trustees with the duty of protecting the public rights, were compelled to sit still with hands tied, and witness the unlawful appropriation of the municipal highways to private use, without any power to prevent so monstrous an evil.

Mr. Pomeroy, discussing the subject of public nuisances, observes: "A court of equity has jurisdiction to restrain existing or threatened public nuisances by injunction, at the suit of the Attorney-General in England, and at the suit of the State, or the people, or municipality, or some proper officer representing the Commonwealth, in this country." 3 Pom. Eq. Jur. § 1349. See, also, 2 Dillon Mun. Corp. (3d Ed.), § 659; 1 High on Inj. (2d Ed.), §§ 768, 769.

It is peculiarly appropriate, in our judgment, that this jurisdiction should be asserted in this age and country at the suit of towns and cities, as it harmonizes with the modern American theory of remitting the governmental management of local affairs, as far as convenient and practicable, to the local authorities. For, as said by a learned judge, "the law is made for the times, and will be made or modified by them."—*Lex. & Ohio R. R. Co. v. Applegate*, 8 Dana, 289; s. c., 33 Amer. Dec. 497.

It is needless to add, that the action of ejectment for a highway, by a municipality, even if the right be admitted to exist, as held by some authorities, is not a complete and adequate remedy in a case of this nature.

This suit, we hold, was properly brought in the corporate name of the City of Demopolis.

There is another feature of the bill, in addition to its purpose to abate the nuisance of obstructing Arch street by a fence erected across it. The further theory of the bill, if we correctly interpret it, is, that the collecting of wharfage at the lower river landing, by the defendant Webb, is an obstruction of the rights of the public in Arch street, which is alleged to run to the low-water mark on the river, and, therefore, to embrace the landing itself. It is argued, that the exercise of this right to collect wharfage is a franchise, and being without authority of law, it is an obstruction to the free use of Arch street, and as such is in the nature of a public nuisance.

Does the bill sufficiently negative the right of the defendants to collect wharfage, either in connection with their warehouse business, or by authority of the original proprietors of the soil, who dedicated Arch street to the public?

The defendants, as owners of the warehouse lots or property, to the south and east of Arch street, it may be admitted, can claim no right to collect wharfage as riparian owners. These lots are described as bounded by Arch street, and this street lies between these lots and the river, extending, as we have said, to the low-water mark. As owners of these attingent lots, therefore, in the absence of any statute to the contrary, the defendants by their deed became the grantees and owners of the ultimate fee only to the center of the street, not to the margin of the river, subject, of course, to the existing easement created by the dedication of the street.—*C. & W. Railway v. Witherow*, 82 Ala. 190, and cases cited on p. 195. Riparian rights can only attach to the ownership of land which is bounded by a navigable stream, or, in other words, which abuts on the margin of the river.—*Yates v. Milwaukee*, 10 Wall. 497; Gould on Waters, sec. 148, p. 271. When, therefore, a street is bounded on one side by a navigable river, the ownership of lots on the other side running to the center, the fee of the half of the street bounded by the river presumptively remains in the original proprietor, subject to the public easement.—*Banks v. Ogden*, 2 Wall. 57; *Municipality, &c. v.*

[City of Demopolis v. Webb.]

*Cotton Press*, 36 Amer. Dec. 624. This is upon the principle, that a dedication, unaided by statute, does not pass the fee or legal title, but only an easement or right of way to the public, with such incidental privileges and powers of control as may be necessary to make it effective.—*Forney v. Calhoun County*, 84 Ala. 215; *Williams v. New York Cent. R. R. Co.*, 69 Amer. Dec. 651. As the owner of the fee or soil, he retains all property rights in it, incidental to ownership, which do not interfere with the use of the street for all reasonable purposes for which it may be needed by the public, and not incompatible with its improvement or development as required by the growth of the town or city of which it is the highway.—*Robert v. Sadler*, 104 N. Y. 229; s. c., 58 Amer. Rep. 498, 501, *note; Municipality, &c. v Cotton Press*, 36 Amer. Dec. 624; *Lorman v. Benson*, 8 Mich. 18; *Providence Steam-Engine Co. v. Providence Steamship Co.*, 12 R. I. 348; s. c., 34 Amer. Rep. 652, 661.

The right to collect wharfage may exist in either of two ways: (1) It may exist as a franchise conferred by legislative grant (*Lansing v. Smith*, 21 Amer. Dec. 89); or (2) it may exist as an incident to the ownership of land abutting on a navigable river, being a riparian right of the proprietor, and as such a right of property, subject, of course, to reasonable legislative regulation.—*Murphy v. City Council of Montgomery*, 11 Ala. 586; *Dutton v. Strong*, 1 Black (U. S.) 23; *Baltimore & Ohio R. R. Co. v. Chase*, 43 Md. 23; *Providence Steam Engine Co. v. Providence Steamship Co.*, 34 Amer. Rep. 652, 666; *Ball v. Slack*, 2 Whart. 508; s. c., 30 Amer. Dec. 279. It was declared in the Constitution of 1868 (Art. I, § 26), and is repeated in Article I, § 26, of our present State Constitution, "that all navigable waters shall remain forever public highways, free to the citizens of the State, and of the United States, without tax, impost, or toll imposed; and that no tax, toll, impost or wharfage shall be demanded or received from the owner of any merchandise or commodity, for the use of the shores, or any wharf erected on the shores, or in or over the waters of any navigable stream, unless the same is expressly authorized by the General Assembly."—Const. 1875, Art. I, § 26. We are called on to decide what effect this clause of the Constitution will exert on the rights of the parties defendant to this suit. It is not contended that the complainant, the city of Demopolis, is invested with any legal authority to conduct the business of wharfing on its own

account; and without such, authority conferred by charter, it can not be exercised.—*Mayor of Mobile v. Moog*, 53 Ala. 561. The contention is, that the dedication of Arch street was a dedication of that portion of it including the wharf, and that the exercise of the right of wharfage interferes with the easement of the public in the street, and being unlawful, because without express authority of law, the continuance of the business should be enjoined.

There may no doubt be a dedication of a public landing, or a wharf, as well as of a street, to the public use, if the intention of the proprietor to part with his property is made clear and unequivocal.—*Godfrey v. City of Alton*, 52 Amer. Dec. 476. Under our decisions, when a person owns land on a navigable river, his ownership is held to extend so far as to embrace the land between high and low-water marks. *Williams v. Glover*, 66 Ala. 189. But a landing, or wharf, may be private property, and the public be permitted to use it by license, or for a charge.—*O'Neill v. Annett*, 3 Dutch. 291; s. c., 72 Amer. Dec. 364. "The result of the authorities," says Mr. Gould in his treatise on Waters, "seems to be, that a dedication of land adjoining a river, for the purpose of public passage to and from the water, with, perhaps, the incidental right of temporary deposit, or a claim of prescriptive user, for the purpose of landing and embarkation, is valid; but that the right to incumber the land with lumber, merchandise, and the like, to a greater extent, or for a longer time, than would be permissible in a highway, is neither within the purpose of the dedication, nor valid as a custom."—Gould on Waters, § 105, p. 193.

In this aspect of the law, there are several defects in the bill fatal to its equity as a bill to enjoin the continuance of the wharfage business. (1.) There is no clear and unqualified averment in the bill, that the landing, or right of wharfage, was dedicated to the public, as well as the street. The very reverse is inferable from the statement, that the upper landing, as to which there is no controversy, was public and *free*. The lower landing, the only one in controversy, is alleged to have been *public*, which is not inconsistent with its permissive use by the proprietor as auxiliary to his own business, or for a charge of toll.—*Gage v. M. & O. R. R. Co.*, 84 Ala. 224. (2.) It is not alleged that the right of the public to an easement in Arch street—the right to pass and re-pass, to open and repair the street, or other privilege of improvement or user—is interfered with in any manner by

the wharfing business. (3.) The bill does not negative the fact, that the defendants are exercising, by privity of contract with the original proprietors, the right which may have existed in them to construct a wharf, and charge tolls at this landing. This, as we have said, was a property right incident to the ownership of the fee. If it existed prior to the enactment of the Constitution of 1868, and was not abandoned by dedication to the public so as to make it free, it could not be taken away by legislative enactment, without compensation to the owner.—*Municipality, &c. v. Cotton Press*, 36 Amer. Dec. 624. It is not made to appear, therefore, that the constitutional provision in question has abrogated the right of the original proprietor, or his assigns, to conduct the wharfing business, here sought to be enjoined. It may be observed, moreover, that the wharf itself is not shown to be constructed so as to injure the navigation of the river, or otherwise render it a public nuisance by preventing convenient access through the street.—*Lansing v. Smith*, 21 Amer. Dec. 89; 1 Dill. Mun. Corp., § 106; *Dutton v. Strong*, 1 Black, 23.

As to the question of parties. We think the chancellor correctly decided, that the only proper party defendant to the present suit was John C. Webb. The bill has equity only, in the present state of its averments, as one to abate the erection of a fence as a nuisance. This is charged to have been done by John C. Webb alone. The other defendants are not shown to have authorized, or participated in it, and are in nowise connected with it.

It follows from the above principles, that the rulings of the chancellor on the demurrer were correct, and his decree is in all respects affirmed. The costs of the two appeals will be equally divided between the appellant and the appellees.

Affirmed.

McCLELLAN, J.—While concurring in the conclusions reached in the foregoing opinion, I desire to add the following, as expressing my reasons for holding the demurrer well taken to those allegations of the bill which seeks to have the right of the public in respect to the river declared and enforced.

The bill alleges generally, that the whole of Arch street to the water's edge was dedicated to the public in 1819. Had the averments on this subject stopped here, they would, in my opinion, have been sufficient to show that the public

[Massie v. Byrd.]

had the absolute right to the free and unobstructed use of the street, not only in passing up and down it, and from other streets on to it, and from it on other streets, but also in passing from this street on to the river, and *vice versa*; and this right of user pertained as well to the transportation of property as the passage of persons. The collection of tolls or wharfage is wholly inconsistent with this right of user, and incompatible with the dedication to the water line. The claim of the defendants of the right to construct, maintain and charge for the use of a wharf at the lower landing, or to collect fees for the passage of persons or property into or off from the river at that point, can be sustained only by proof of a reservation of these rights out of the original dedication, and their connection with them as successors of the original proprietors. As a matter of pleading, however, construing the allegations of the bill most strongly against the complainant, subsequent paragraphs qualify the general averment of dedication to the water's edge, and state facts which, either of themselves, or in their relation to the other facts, admit of the conclusion that there was a reservation by the original dedicators of the wharfing or landing privilege, and the right to charge tolls, &c., and that the defendants have succeeded to these rights. The bill fails to negative, with sufficient certainty, the existence of this right thus acquired in the defendants; and the demurrer on this ground was properly sustained.

STONE, C. J., dissenting.—I think the bill, considered in its entirety, leaves no room for any inference that wharfage privileges were retained in the dedicator.