14 So.3d 887 (2008)
Henry Winder WEBB et al.
v.
CITY OF DEMOPOLIS.
2061087.
Court of Civil Appeals of Alabama.
June 13, 2008.
Rehearing Denied August 15, 2008.
*888 Isaac P. Espy and Mark A. Scogin of Espy, Nettles, Scogin & Brantley, P.C., Tuscaloosa, for appellants.
Richard S. Manley of Manley, Traeger, Perry & Stapp, Demopolis; and Rick A. Howard and April W. McKay of Nix Holtsford Gilliland Higgins & Hitson, P.C., Montgomery, for appellee.
THOMAS, Judge.
On September 14, 2006, Henry Winder Webb, Martha Virginia W. Jackson, Caro F.W. Osborne, and Mem Creagh Webb II (hereinafter collectively referred to as "the Webb family") filed a complaint in the Marengo Circuit Court, seeking declaratory relief with respect to property located in the City of Demopolis ("the City") that they claim to own by virtue of adverse possession and upon which the City claims a right-of-way. On October 13, 2006, the City, arguing that the doctrine of res judicata bars the Webb family's claim, filed a motion pursuant to Rule 12(b)(6), Ala. R. Civ. P., to dismiss the action for failure to state a claim upon which relief can be granted. The City maintained that a dispute over the same property between the City and John C. Webb, the Webb family's predecessor in title, was conclusively decided in favor of the City in 1889. The City filed a brief in support of its motion and attached copies of two decisions by the Alabama Supreme CourtCity of Demopolis v. Webb, 87 Ala. 659, 6 So. 408 (1889) ("Webb I"), and Webb v. City of Demopolis, 95 Ala. 116, 13 So. 289 (1892) ("Webb II")as well as copies of maps, pleadings, and other exhibits referenced in the Webb I and Webb II opinions. The circuit court set the motion for a hearing; the hearing was continued several times. On July 17, 2007, the Webb family filed a motion for a preliminary injunction, seeking to prevent the City from proceeding with any development or construction in the area known as the "Arch Street Scenic Walk and Riverfront Development Project."
On August 8, 2008, the circuit court granted the City's motion and dismissed the Webb family's complaint with prejudice. *889 The Webb family appealed to the Alabama Supreme Court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Finality of the Judgment
Although neither party has raised an issue concerning this court's jurisdiction in this case, we must first consider whether this court has jurisdiction over this appeal, because "'jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.'" Wallace v. Tee Jays Mfg. Co., 689 So.2d 210, 211 (Ala.Civ.App. 1997) (quoting Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)). Section 12-22-2, Ala. Code 1975, provides, in pertinent part, that an appeal will lie to the appropriate appellate court "[f]rom any final judgment of the circuit court." "A `final judgment is a "terminal decision which demonstrates there has been a complete adjudication of all matters in controversy between the litigants."'" Horton v. Horton, 822 So.2d 431, 433 (Ala.Civ.App.2001) (quoting Dees v. State, 563 So.2d 1059, 1061 (Ala.Civ.App. 1990)).
In this case, the Webb family has appealed from the circuit court's order granting the relief sought in the City's motion to dismiss their complaint despite the circuit court's failure to rule on their motion for injunctive relief. For reasons that will be discussed infra, we conclude that, by dismissing the Webb family's complaint for declaratory relief on the basis that it failed to state a claim upon which relief can be granted, the circuit court implicitly denied the Webb family's request for injunctive relief. Accordingly, we conclude that the judgment is final and appealable. Cf. Hingle v. Gann, 368 So.2d 22 (Ala.1979) (holding that when judgment established true boundary between the parties but made no mention of cross-claims alleging trespass, both parties' claims for money damages were deemed denied).

Standard of Review
Rule 12(b), Ala. R. Civ. P., states, in pertinent part:
"If, on a motion asserting the defense numbered (6) to dismiss for failure ... to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ...."
Although the City labeled its pleading as a motion to dismiss, it submitted in support of that motion copies of two Alabama Supreme Court decisions as well as copies of the maps and other documentary evidence referenced in those decisions. Because the circuit court was presented with, and did not exclude from its consideration, matters outside the pleadings, the City's motion to dismiss was converted into a motion for a summary judgment. See Rule 12(b).
The parties appear to believe that the motion to dismiss was not converted, pursuant to Rule 12(b), into a summary-judgment motion, evidently basing that belief upon certain language in Geer Brothers v. Crump, 349 So.2d 577 (Ala.1977). In that case, the trial court dismissed, based on the doctrine of res judicata, a complaint against an insurance agent for failure to provide coverage. The court stated:
"At the outset, the plaintiff argues on this appeal that the trial court had before it only the complaint, the motion to dismiss, the Geer affidavit, and briefs of the parties when the motion to dismiss was ruled upon. The defendant, on the other hand, states that the record in Civil Action No. 6290, which is contained in the record on this appeal, was before the trial court. The record on *890 this appeal is silent on the question of whether either party introduced that record as part of the pleadings or as evidence for or against that motion. However, any such action would have been superfluous, because when a party refers to another proceeding or judgment of a court in his pleading before that court, as was done here, the court on motion to dismiss may take judicial notice of the entire proceeding, or so much of it as is relevant to the question of law presented. Moreover, the parties on appeal have argued the issue of res judicata, and of necessity have brought into consideration the effect of the former judgment. Therefore, we have before us the principal question: Whether the action of the trial court was proper, and in our response to that issue we shall treat the trial court's ruling as having been one upon a motion for summary judgment."
349 So.2d at 579 (final emphasis added; citation omitted). The above-quoted language from Geer Brothers indicates that a trial court may take judicial notice of the proceedings in a former case. It does not stand for the proposition that, when a trial court takes judicial notice of the proceedings in another case, there is no conversion of a motion to dismiss into a summary-judgment motion. See American Trust Corp. v. Champion, 793 So.2d 811, 813 (Ala.Civ.App.2001) (stating that "[b]ecause on the issue of res judicata, the trial court considered matters outside the pleadings,... the motion to dismiss on that ground should be treated as one for a summary judgment, and ... we should review the res judicata issue by the summary-judgment standard").
Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see § 12-21-12(d), Ala.Code 1975.

Discussion
In 1888, the City filed a bill in the chancery court of Marengo County to abate a public nuisance. The City asserted that John C. Webb had erected a fence across Arch Street, a public thoroughfare that ran north and south along the banks of the Tombigbee River, from the low-water mark to the numbered lots on the east side of the street; several of those lots were owned by Webb. The City also alleged that Webb was collecting wharfage fees from the public at the "lower landing," a steamboat landing on the Tombigbee River at Arch Street, thereby obstructing the free use of the landing by the public. The City sought an injunction to compel Webb to remove the fence and to restrain him from collecting wharfage fees.
Webb filed a demurrer, asserting, among other things, that the City's bill failed to show that Arch Street had ever been laid off or opened as a street. The *891 chancery court overruled the demurrer, and Webb appealed to the Alabama Supreme Court; the supreme court affirmed. In order to understand what was at issue in the Webb I and Webb II opinions, we set out a brief review of common-law pleading.
"Common law pleading allotted the defendant a limited number of apparently simple responses to the plaintiff's allegations. The principle behind the limited number of pleadings afforded a common law defendant reflected common law pleading's emphasis on producing a single issue for resolution. Essentially, three responses to a common law plaintiff's claim existed: (1) a demurrer, which attacked the plaintiff's allegation by asserting that the plaintiff stated `no legal claim'; (2) a dilatory plea, which took no position on the facts or law but asserted a `legal reason, incidental to the merits, why the court could not hear the case'; and (3) a plea in bar or peremptory plea, which `assert(ed) a defense that could bar recovery' by the plaintiff. The responses had to be taken in a prescribed sequence.
"Within the first category of responsive pleadingsthe demurrerthe defendant would state `that, even if true, the [plaintiff's] allegations state[d] no legal claim.' In modern parlance, the demurrer was akin to a Rule 12(b)(6) motion available under the Federal Rules of Civil Procedure. A common law demurrer was required `to attack a pleading on its face,' and a speaking demurrer, relying on matter not within the plaintiff's complaint, was not allowed. A demurrer essentially conceded the factual truth of the plaintiff's allegation, but challenged the legal sufficiency of what was alleged`so what?' is the generally accepted translation of a demurrer."
Harry Emmanuel Scozzaro, Jr., Notice Pleading Under the Federal Rules of Civil Procedure Following Swierkiewicz v. Sorema, N.A.: Standing on the Shoulders of Conely and Leatherman, 26 Am. J. Trial Ad. 385, 398-99 (2002) (footnotes omitted).
For present purposes, the only thing at issue in Webb I was the sufficiency of the City's pleading that Arch Street was a public thoroughfarei.e., that it had been dedicated to the public use and that its dedication had been accepted by the City. The supreme court disposed of that issue easily, holding that "the bill alleges with sufficient certainty a dedication of the street to the public use, and the acceptance of such dedication by the city authorities." Webb I, 87 Ala. at 663, 6 So. at 409. The court explained:
"`It may be stated as a general rule' ... `that where the owner of urban property, who has laid it off into lots, with streets, avenues and alleys intersecting the same, sells his lots with reference to a plat in which the same is so laid off; or where, there being a city map on which this land is so laid off, he adopts such map by reference thereto, his acts will amount to a dedication of the designed streets, avenues and alleys to the public.'"
87 Ala. at 663-64, 6 So. at 409. The court determined that when the general assembly accepted the city charter incorporating the Town of Demopolis,
"[t]his was an adoption of the plan or map, as part of the charter, with its streets there marked out and dedicated; and the acceptance of the charter operated ipso facto, as an acceptance of such dedication, without further action on the part of the municipal authorities."
87 Ala. at 664, 6 So. at 409-10. Moreover, the court held, Webb was estopped to deny that Arch Street was a public highway because Webb's title was derived from *892 conveyances running back to the original dedicators and proprietors and because all the lots, including Webb's lots, had been described with reference to the original map or plat of the town that laid out the streets. Id. The court stated: "This estops [Webb] from denying that Arch street is a public highway, having potential existence, whether actually opened or not." 87 Ala. at 664, 6 So. at 410 (emphasis added). Quoting from a Rhode Island decision, the court explained:
"`The ground of the estoppel' ... `is, that the easements and servitudes indicated by the plat constitute a part of the consideration for which all the conveyances referring to the plat were made; and therefore no person, while claiming under the conveyances, can be permitted to repudiate them, or to deny that they exist where they are capable of existing.'"
87 Ala. at 665, 6 So. at 410 (quoting Providence Steam-Engine Co. v. Providence & Stonington Steamship Co., 12 R.I. 348, 355 (1879)). Further, the court stated:
"It follows, we repeat, from this principle, that it is immaterial whether the street in question had been opened and used all its length through or not. [Webb] purchased [his] lots in full recognition of its existence as a public street or municipal highway, liable to be opened and used as such whenever the growing demands of an increased population and commerce might require it. [The Webbs] are estopped now to deny to it this character, upon the plainest principles of justice and right."
Id.
After Webb I, the City amended its bill in the chancery court to cure various defects in the pleading that the supreme court had addressed in the Webb I opinion; those defects are not relevant to the issues presented in the instant case. Following the City's amendment, according to the synopsis preceding the Webb II opinion, Webb "claimed, by way of plea and answer, that the city had relinquished and forfeited her rights by nonuser for more than forty years; and pleaded laches, lapse of time, the statute of limitations, prescription, and equitable estoppel." 95 Ala. at 117, 13 So. at 289 (first emphasis added).
According to the synopsis, following a trial, the chancery court held (1) that Arch street "was dedicated in the year 1819, by the then owners of the soil, to the free use of the public as a street, and as a landing, and the same should forever remain open to the free use of the public as a street and as a landing," 95 Ala. at 118, 13 So. at 289-90, and (2) that the erection of a fence across Arch Street and the collection of wharfage fees at the lower landing in Arch Street were public nuisances that should be abated. Id. Webb again appealed to the Alabama Supreme Court.
In Webb II, the supreme court outlined three questions of "paramount and determining importance," 95 Ala. at 122, 13 So. at 290, namely:
"First: Did the original proprietors of the land on which the city of Demopolis was subsequently built dedicate to the uses of the public as a street that part of said land which lies between certain numbered lots in the plat or plan of said city and the Tombigbee river, now known as `Arch Street?' Second: Did such dedication, assuming it to have been efficaciously made, extend to the water-line at all stages of the river in such sort as to invest the inhabitants of Demopolis, and the public generally, with the right to pass, in their persons and property, from said street on to the river, and from the river on to the street, without toll, charge, or hindrance? Third: Has this public right, assuming its original existence, been *893 lost, so far as it pertained to that part of said street which has been appropriated by [Webb], by reason of the character, extent and duration of [his] possession, occupancy, and use thereof?"
Id. Tracing the history of the City back to the original land-grant patent from the United States to George S. Gaines, William A. Cobb, and others in 1819, the court answered the first questionwhether the land between the edge of the river and numbered lots east of the river on the city plat had been dedicated to the public as Arch Streetin the affirmative. 95 Ala. at 125-26, 13 So. at 292. With respect to the second questionthe extent to which Arch Street had been dedicated to the publicthe court held that "the whole of Arch Street, extending to [the] low-water mark, was dedicated to the public." 95 Ala. at 133, 13 So. at 295.
With respect to the third question "whether the easement [in Arch Street] vested in the public has been lost .... through the possession of [the Webbs] and their predecessors in ownership of the lower warehouse property for a great period of time, under an exclusive claim of right," 95 Ala. at 133, 13 So. at 295the court observed that "a great mass of testimony has been taken by each side," most of which, the court said, was "entirely immaterial to any issue in the cause." Id. The court explained:
"[W]e will concede, for the [sake of] argument, that the [Webbs] and their predecessors in ownership of the lower warehouse property had, without interruption, since 1844 had actual possession of said street, said lower landing, and the immediate approaches thereto; that this actual possession has all along been exclusive of the whole world; that continuously during all that time they have claimed title to said landing and the approaches, and so much of said street as has been occupied by them, and have claimed in all cases, and exercised at pleasure, the right to charge all persons for the privilege of using said landing as a wharf; and further, that they have greatly improved the landing and approaches theretohave, if you please, created the landing, in the sense of building the approaches to it, and providing all the facilities which now exist, or have ever existed for reaching and going on the river at that point; or, in other words, we will concede everything which [the Webbs] claim as to the facts of their relation to this landing.
"But all this will not help them. The law applied to these facts does not enforce any result of benefit to them. No statute of limitations, or principle of repose, obtains here. Neither the statute of limitations, nor the rule which carries title to adverse possession, nor the doctrines of staleness, equitable estoppel or prescription, can be invoked or applied against the right of the city of Demopolis, and of the public, to have this street opened from end to end, and from side to side, from the municipal line on the north to the municipal line on the south-east, and from the numbered lots of the town to lower-water mark of the stream, and devoted to the uses to which it was dedicated by the original proprietors in 1819. The city never had any alienable title to, or right in the street. It could never have granted it, or any part of it away, for any purpose whatever. Having no power of direct alienation, it could not pass title indirectly by submitting for the statutory period to private possession, claim and use. Having no power to grant it, no grant can be presumed from the lapse of time, however great, during which it has allowed respondents to deal with a part of it as belonging to them. [The Webbs] being held to knowa rule, the propriety of *894 which is emphasized here by the muniments of their title to the warehouse property, which show the factthat all the space between their lots and the low-water line of the river was in and constituted Arch street, expended money and labor in putting improvements thereon at their own peril, and in recognition of the right of the city to deprive them of all private benefit therefrom by throwing the entire street open to the free use of the public, whenever the municipal authorities deemed it expedient so to do; and hence no element of equitable estoppel against the public enters into their claim."
95 Ala. at 133-134, 13 So. at 295-96 (emphasis on "created" and "facts" original; other emphasis added). As the foregoing quote from Webb II demonstrates, the issue whether the Webb family and their predecessors in title could have gained title to any portion of Arch Street by adverse possession was previously litigated in the chancery court of Marengo County and conclusively decided by the Alabama Supreme Court 116 years ago. See generally Montgomery County v. City of Montgomery, 195 Ala. 197, 199, 70 So. 642, 643 (1916) (stating that "there may be no adverse possession of public streets, public wharves, public shore lands, or public parks, such as would bar a right of action therefor by the municipality").

Res Judicata
In Dairyland Insurance Co. v. Jackson, 566 So.2d 723, 725 (Ala.1990), the supreme court stated the elements of the test for applying the doctrine of res judicata:
"The elements of res judicata, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits. Hughes v. Allenstein, 514 So.2d 858, 860 (Ala.1987). If those four elements are present, any claim that was or could have been adjudicated in the prior action is barred from further litigation."
The first three elements are not at issue in this case. There was clearly a prior judgment on the merits of the City's 1888 action against John C. Webb, rendered by a court of competent jurisdiction. The Webb family obtained their property by deed from John C. Webb and, as "`successors in title' to [John C. Webb], privity exists, and the third [element] is satisfied." Henderson v. Scott, 418 So.2d 840, 842 (Ala.1982).
The only disputed issue is whether the cause of action presented here is the same as the cause of action presented in Webb I and Webb II. The Webb family asserts that it is not. They base that assertion upon factual arguments, the following two of which are borne out either by the record on appeal in the instant case or by the facts recited in Webb I: (1) the Webb family's predecessor in title did not acquire the property that is the subject of the instant appeal (the shaded triangle on the map attached as an appendix to this opinion) until 1911, over 20 years after the institution of the lawsuit that culminated in Webb II; and (2) the supreme court's opinion in Webb I indicates that the subject property (the shaded square on the attached map) was south of Washington Street, 87 Ala. at 664, 6 So. at 410, whereas the property at issue in this appeal is north of Washington Street. The third factual argument upon which the Webb family bases its claim that the cause of action presented in this case is not the same as in Webb I and Webb II is stated in their reply brief as follows:
"In the instant matter, the complaint of the Webb family requests a declaratory *895 judgment to determine the location of Arch Street and to define its dimensions. In contrast, in Webb I and Webb II, the issue before the court was whether Arch Street was a dedicated street open to the public and guaranteed to be free from obstruction."
The issue in Webb I and Webb II was not "whether Arch Street was a dedicated street open to the public and guaranteed to be free from obstruction." In fact, our supreme court in Webb I affirmed the chancery court's overruling of John C. Webb's demurrer on that very ground, and pointedly stated that "it is immaterial whether the street in question had been opened and used all its length through or not." 87 Ala. at 665, 6 So. at 410. The court further stated that, because Webb had bought his property with the knowledge that Arch Street was designated on the plat "as a public street, or municipal highway, liable to be opened and used as such whenever the growing demands of an increased population and commerce might require it," id., Webb was estopped to deny "that Arch street is a public highway, having potential existence, whether actually opened or not." 87 Ala. at 664, 6 So. at 410 (emphasis added).
Despite the invalidity of the Webb family's third factual argument, their first two factual arguments indicate that the cause of action presented here is not the same as the cause of action presented in Webb I and Webb II. In Chapman Nursing Home, Inc. v. McDonald, 985 So.2d 914 (Ala.2007), our supreme court collected cases discussing the same-cause-of-action element of res judicata:
"Discussing the same-cause-of-action element of res judicata, this Court has noted that `"`the principal test for comparing causes of action [for the application of res judicata ] is whether the primary right and duty or wrong are the same in each action.'"' Old Republic Ins. Co. v. Lanier, 790 So.2d 922, 928 (Ala.2000) (quoting Wesch v. Folsom, 6 F.3d 1465, 1471 (11th Cir.1993)). This Court further stated: `"Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts."' 790 So.2d at 928 (quoting Wesch, 6 F.3d at 1471). As a result, two causes of action are the same for res judicata purposes `"when the same evidence is applicable in both actions."' Old Republic Ins. Co., 790 So.2d at 928 (quoting Hughes v. Martin, 533 So.2d 188, 191 (Ala.1988))."
Chapman Nursing Home, 985 So.2d at 921. The cause of action underlying the instant appeal does not arise out of the "same nucleus of operative facts" or the "same evidence" as the cause of action presented in Webb I and Webb II. We, therefore, hold that the doctrine of res judicata is not a bar to the relief sought by the Webb family.

Collateral Estoppel
Although res judicata is not a bar to the relief sought by the Webb family, collateral estoppel"`which is a subset of the broader res judicata doctrine,'" Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So.2d 507, 516 (Ala.2002) (quoting Little v. Pizza Wagon, Inc., 432 So.2d 1269, 1272 (Ala.1983) (Jones, J., concurring specially))is a bar. In Dairyland Insurance Co. v. Jackson, 566 So.2d at 726, the supreme court outlined the elements of collateral estoppel:
"The doctrine of collateral estoppel, or issue preclusion, does not require identity of the causes of action involved. The elements of collateral estoppel are: (1) an issue identical to the one litigated in the prior suit; (2) that the issue was *896 actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties."
All the elements of collateral estoppel are satisfied. In Webb II, adverse possession of a portion of the thoroughfare known as "Arch Street" was an issue, as it is here; the issue was actually litigated in the chancery court, 95 Ala. at 133, 13 So. at 295; and the issue was necessary to the judgment, see Webb II, 95 Ala. at 122, 13 So. at 290 (stating that the issue was one of "paramount and determining importance"). As we have already stated, the Webb family obtained their property by deed from John C. Webb and, as "`successors in title' to [John C. Webb], privity exists, and the [same-party element] is satisfied." Henderson v. Scott, 418 So.2d at 842. See generally Dairyland Ins. Co. v. Jackson, 566 So.2d at 726 (explaining that the "`same parties' requirement is not strictly enforced if the party raising the defense of collateral estoppel, or the party against whom it is asserted, is in privity with a party to the prior action").
The City presented a prima facie showing that there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law based on the affirmative defense of collateral estoppel, which is "`a subset of the broader res judicata doctrine,'" Lee L. Saad Constr. Co. v. DPF Architects, P.C., 851 So.2d at 516. The Webb family's request for "a declaratory judgment to determine the location of Arch Street and to define its dimensions" was granted over 100 years ago when our supreme court held that Arch Street occupies "the whole space from [the numbered] lots [east of the Tombigbee River] to the low-water mark," Webb II, 95 Ala. at 130, 13 So. at 294, and when it determined that
"[a]s owners of the[ ] attingent lots [to the east of the river and Arch Street],... the [Webbs] by their deed became the grantees and owners of the ultimate fee only to the center of [Arch] street, not to the margin of the river, subject, of course, to the existing easement created by the dedication of the street."
Webb I, 87 Ala. at 668, 6 So. at 411.
The judgment of the Marengo Circuit Court is affirmed.
AFFIRMED.
THOMPSON, P.J., concurs.
PITTMAN, J., concurs in part and concurs in the result, with writing.
BRYAN and MOORE, JJ., concur in the result, without writings.
PITTMAN, Judge, concurring in part and concurring in the result.
I concur in the main opinion except insofar as it may indicate that conversion of a motion to dismiss to a summary-judgment motion must occur in every case when a trial court takes judicial notice of other judicial proceedings. See Slepian v. Slepian, 355 So.2d 714, 717 (Ala.Civ.App.1977) (trial court could properly dismiss action after taking judicial notice of another civil action pending in that court when defendant filing motion to dismiss asserted that the plaintiff's claim was pending in the other civil action); and Petersen v. Woodland Homes on Huntsville, Inc., 959 So.2d 135, 141 (Ala.Civ.App.2006) (opinion of three judges that trial court's consideration of materials filed in parallel case pending in the same court did not mandate treatment of ensuing dismissal as a summary judgment). In this case, however, I believe the main opinion properly reviews the trial court's judgment as a summary judgment because the trial-court proceedings giving rise to Webb I and Webb II *897 were not pending at the time that the City moved for dismissal. See Briggs v. Woodfin, 395 So.2d 1024, 1026 (Ala.Civ.App. 1981) (distinguishing Slepian on that basis).

APPENDIX