# Williams *v.* Glover.

*Action for Rent Reserved by Written Lease.*

1. *Riparian rights on navigable river.*—When a person owns lands on a navigable river, or an island in the river, his ownership extends to the margin of the water at ordinary stage, and embraces the land between high and low water mark.

2. *Contract; general rule of construction.*—Parties, when competent to contract, may make their own contracts, and the courts will not relieve them from the hardships of a bad bargain ; yet, in construing a written contract which is not clearly expressed, it is permissible to look at the effect or result of different constructions, with a view to ascertain the intention of the parties.

3. *Lease construed, as to quantity of land for which rent was reserved.*—Under a written lease of a tract of land situated on an island in the Tennessee river, described as "all the lands on the island owned by the said" lessor, with a specified exception, "said lands to be hereafter measured, to ascertain the amount of the same ;" the rent reserved being "eight per-cent. *per annum* on the value of said lands, estimated at $35 per acre ;" *held,* that the rent was to be estimated on the number of acres in the entire tract, and was not limited to the cultivable portion ; but that the road-bed and right of way of a railroad company, acquired by it prior to the lease, should be deducted.

4. *Parol evidence; admissibility and relevancy in construing written contract.* In the construction of a written lease, with the view of determining whether the rent per acre reserved was to be estimated on the entire tract, or on the cultivable portion only, it is not permissible to prove that another person had offered the stipulated price estimated on the entire tract.

APPEAL from the Circuit Court of Jackson.

Tried before the HON. LOUIS WYETH.

This action was brought by William Williams individually, and William Williams and William E. Williams as executors of the last will and testament of James Williams, deceased, against William C. Glover ; and was commenced on the 18th September, 1876. The complaint, as amended, contained the common counts, and a special count for the rent reserved by a written lease, which was read in evidence on the trial, and which, as set out in the bill of exceptions, was in these words: "This article of agreement, made and entered into this 2d day of January, 1871, between William Williams, for himself and the heirs of James Williams, deceased, of the one part" [and William C. Glover, of the other part?], "witnesseth, that the said William Williams, for himself and the heirs aforesaid, hath this day leased, and to farm let, to the said Glover, the following described tract or parcel of land—that is to say, all the lands on the island owned by the said Williams and the above named heirs, opposite Bridgeport in the county of Jackson, State of Alabama, except that part which

the said Williams has agreed to sell to R. L. Hembree; also, all the land in and around the town of Bridgeport, owned by said Williams and said heirs, being the same bought by James E. Williams of Joel B. Arundale; said lands to be hereafter measured, to ascertain the amount of same; the above lease being for the term of five years, from the 1st day of January, 1871. And the said Glover, on his part, agrees to pay to the said Williams, at the expiration of each year, eight per-cent. *(8 pr. ct.) per annum* on the value of said lands, estimated at thirty-five dollars ($35) per acre. And the said Glover furthermore agrees to clear up all the above described lands, and cut the necessary ditches upon the island lands; and to restore the whole to said Williams, in good farm-like condition for cultivation, at the expiration of the five years, except as to clearing the lands on the south side of the branch on the Bridgeport lands. The said Glover agrees, also, to fill up all gullies on the hill-sides, with brush or other material, so far as may be necessary to stop the washes. The said Williams agrees to put the said Glover in peaceable possession of the said lands, and secure him in the same for the term aforesaid. In witness whereof, the said parties have signed the above agreement in duplicate." (Signed by both parties.)

On this lease, it was admitted that $800 was paid for the rent of the year 1871, $800 for 1872, and the same amount for each of the years 1873 and 1874; and the action was brought to recover the balance due, the amount of which was controverted. The defendant pleaded, " in short by consent," payment, and set-off; and the cause was tried on issue joined on these pleas. On the trial, as the bill of exceptions states, the plaintiff read the written lease in evidence, and introduced one Foster as a witness, " who was the county surveyor, and who produced certain surveys of the lands mentioned in the lease, and proved that the same had been by him measured, at the direction of the plaintiff, between the 20th January, 1871, and the last of the year 1875; and that the entire tract contained 345 acres. Plaintiff here rested his case. Said witness stated, on cross-examination by defendant, that of said entire tract so surveyed, on the island in the Tennessee river, twelve acres thereof consisted of that portion of the island between the low water, or usual flow of the river, and the top of the bank; nine acres and one half of woodland on the right bank of the river, and near the town of Bridgeport, described in the exception mentioned in the last paragraph of the lease; eleven acres and one half consisted of the fill and road-bed of the Memphis & Chattanooga Railroad, which crosses through said island, and excavations made along said road-bed at and

near said fill or embankment, and of a road-way to the Hembree lands, more [none?] of which was susceptible of cultivation. Plaintiff moved to exclude said statement of the witness, and not permit it to go to the jury as evidence, because it was illegal, irrelevant and inadmissible; and in this connection, plaintiff invoked the court to inspect the written contract, and to interpret the same." Thereupon, the court inspected the lease, "and gave a construction to the same, declaring that the defendant was entitled to an abatement on the rent, for so much of the lands as was situated between the top, or outer banks of the island, and the low water, or ordinary flow of the river; and that the testimony offered to that end was legal and competent. The court did not then announce any other opinion upon the admissibility or legality of said evidence objected to, nor was the same withdrawn from the jury.

"Said witness further stated, that the said lands between the low water and the top of the banks was not susceptible of cultivation, and some was in timber and other growth; that the portion of the land included in the road-bed to the Hembree lands, and the fill and excavations of the said railroad, to the amount of eleven acres and a half, were not susceptible of cultivation; and that nine acres and 42-100ths, near Bridgeport, was in timber and hill-side, and unsuited to cultivation. Plaintiff then introduced A. Gunter as a witness, who resides at Bridgeport, near said island, and who testified, that so much as two acres of the excavations along the line of said railroad-bed was susceptible of cultivation; that on the lower or south side of the fill it was in a state of cultivation, up to the foot of the fill; that corn grew well in the bottoms of these excavations, and that to the extent of two acres they were and have been cultivated. Said witness further stated, that since the expiration of the defendant's lease, R. A. Jones, the present proprietor of a portion of the lands, had in fact cleared up and put in cultivation a strip of land between the low water and the top of the bank, of the length of fifty yards by one rod or more in width, and had cleared up or deadened another strip of somewhat like dimensions, on the west bank of the island; and that he had not so carefully examined the eastern bank. Plaintiff offered to prove by this witness, that on the 2d January, 1871, he proposed to lease the land to witness and his son, the entire tract of land to be included, at the rental value of $35 per acre, eight per-cent. on cash value; that preference was given to defendant, at his option, defendant went into possession, &c. The court refused to permit plaintiff to prove these facts, under its holdings and rulings, and plaintiff excepted. The plaintiff testified, that, in making

[Williams v. Glover.]

up his account against the defendant, he had voluntarily omitted as much as nine acres, for the land covered by the railroad fill or embankment, and the road-way granted to said Hembree, and did not now seek a recovery therefor. This was all the evidence on these points; and to the rulings and opinion of the court thereon the plaintiff severally objected and excepted. To the opinion and judgment of the court in allowing defendant to prove by said Foster the quantity of land in the tract between the top of the bank and low water, and that the same was not susceptible of cultivation, plaintiff excepted; and to the opinion and judgment of the court in allowing the defendant to prove the quantity of land contained in the railroad embankment and excavation along it which was unfit for cultivation, and not susceptible of cultivation, so far as the same exceeded in quantity that remitted by plaintiff, plaintiff excepted; and to the judgment and opinion of the court in the construction of the contract of lease and its stipulations, as to plaintiff's right to recover thereunder, and as to the quantity of land for which he had the right of recovery, plaintiff excepts; and to the judgment and opinion of the court in referring to the jury the said matter of the quantity of land for which plaintiff had the right to recover, and limiting it so as to exclude from their consideration any part less than the whole or entire tract, and in not limiting it to the quantity of land which plaintiff had voluntarily remitted; and to the action, opinion and judgment of the court, in not determining this to be, under the lease, a question of law for judicial interpretation, and not of fact for the jury, plaintiff excepts; and to the admission of said testimony hereinbefore set out, and to each and every part thereof, plaintiff excepts; and to the exclusion of the offered testimony of Gunter, he excepts.

"After all the evidence in the cause had been given in, which consisted of matters of account and set-off, in no wise material to this point, as is admitted by counsel, the court charged the jury, among other things, that the plaintiff had the right to recover rent for the nine acres of land in timber, on the Bridgeport side of the river, and mentioned as the excepted land in the lease; but that plaintiff would have no right to recover for the lands on the island between low water and the top of the bank. And the court also charged the jury, at the request in writing of the defendant, that if the defendant offered to clear the nine and 42-100 acres of land on the Bridgeport side, and cultivate the same, and plaintiff objected to its being cleared, and said land could not be cultivated without clearing, plaintiff would not be entitled to

rent for said nine acres; to the giving of which charge, plaintiff excepts."

The rulings of the court on the evidence, and in the construction of the lease, and the charges to which exceptions were reserved, are now assigned as error.

ROBINSON & BROWN, for appellant.

BRANDON & JONES, contra.

STONE, J.—A proper construction of the contract of lease solves the only material question raised by this record. Williams let to Glover a tract of land near Bridgeport, in Jackson county, by written lease; the letting to continue five years, and the rent to be paid annually. Part, probably a large part of the tract, is an island in the Tennessee river, and, of course, borders on the river. Some twelve acres of the tract lie between high and low water mark, and is covered with water in high floods. Another portion of the land was in timber, about nine and a half acres: and there is a stipulation in the lease, excepting that part from the obligation the tenant assumed to clear up the land. This woodland piece, it seems, was neither to be cleared nor cultivated. The plaintiff, on the trial, remitted all claim for rent for the nine and a half acres of woodland. A railroad track crosses the island, and its embankment and the excavations cover another portion of the tract, probably about eleven acres. Appellant here (plaintiff below) claims that the tenant shall pay the agreed rent per acre for the entire tract, including the uncultivable as well as the cultivable portions; and the appellee claims he shall not be charged with rent for the lands between high and low water marks, nor for the lands covered by the railroad embankment and excavation.

The ownership of plaintiff extends to the margin of the water, at ordinary stage, and hence embraces the land between high and low water marks.—Bullock v. Wilson, 2 Por. 436; Mayor v. Eslava, 9 Por. 577; Howard v. Ingersoll, 17 Ala. 780, 791; 3 Kent's Com., marg. 427, note d.

The terms of the written lease are, that "the said Glover, on his part, agrees to pay to the said Williams, at the expiration of each year, eight per cent. (8 pr. ct.) per annum on the value of said lands, estimated at thirty-five dollars ($35) per acre." It had been previously stipulated in the lease, that "said lands [were] to be hereafter measured, to ascertain amount of same." If this had been a contract of sale and purchase, the lands to be afterwards measured to ascertain the quantity, and the purchaser to pay thirty-five dollars per

acre, no one would question his liability to pay at that rate for the entire tract, including every description of land, whether cultivable or not. We think the proper construction of the contract is, that the tenant was to pay the agreed rent per acre for the entire tract, for the following, among other reasons: The lands are described as said lands—not as the cultivated part of said lands. These were to be measured, that the amount of rent should be ascertained, at a given price per acre. The rent was to be eight per-cent. *per annum*, on a stipulated value of the lands per acre. Now, eight per cent. *per annum* is the rate of interest fixed by our statute, for the loan or forbearance of money. Eight per-cent. *per annum*, on the value of real estate, is certainly a very moderate rent. If the eight per-cent. be limited to the cultivated portion, what compensation has the landlord for his investment in the uncultivated part? True, parties may make their own contracts, and it is not for us to relieve them from the hardships of a bad bargain. Still, we may look at those results in interpreting a contract, which is not as clearly expressed as it might have been. Lastly, the parties, by the terms of the lease, show the rent was graduated by the value of the lands, and not by the value of the use and occupation. We think, however, if the railroad company had condemned, or otherwise acquired, a road-bed and right of way, the land thus covered should be excluded from the computation. Of such part, Williams could not put Glover in possession.

The Circuit Court did not err in excluding the testimony of Gunter, that he had offered the same rent, to be computed for the whole tract. The interpretation of the contract can not be aided in that way.—*Tanner v. Railroad Co.*, 60 Ala. 621, 643.

Reversed and remanded.