# Highland Avenue & Belt Railroad Co. v. Birmingham Union Railway Co. *et al.*

*Bill in Equity for an Injunction.*

1. *Contracts; construed by aid of certain circumstances.*—A contract must be interpreted in the light of surrounding circumstances; and in its construction the court must place itself in the place of the contracting parties at the time of its execution and look at the occasion which gave rise to it, the relative position of the parties, and their obvious design as to the object to be accomplished.

2. *Same; contract between two railroad companies looking to the use in common of a track.*—Where two street railway companies, using horse cars, entered into a contract, by which it was provided that one of the companies should construct a track and bear all expenses of repairing it, and that the other should have the privilege of running its cars along said track, paying therefor a certain stipulated compensation, so long as the use continued, such contract does not contemplate a change to steam power; and if upon both of the street railway companies substituting steam for horse power, it becomes necessary to lay a heavier track at a much greater cost than the original construction for the horse cars, such track can not be used by the other street railway company at the same compensation originally stipulated for, but such company must increase its compensation in reasonable proportion with the increase in the cost of construction, for the use of steam power.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellant, the Highland Avenue & Belt Railroad Company, against the appellees, the Birmingham Union Railway Co. and the Birmingham Railway & Electric Company. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

The complainant in the original bill demurred to the

cross-bill, assigning among other grounds the following :
1st. That it was not averred in said cross-bill that the
Birmingham Union Railway Company or the Bir-
mingham Railway & Electric Company ever had any
power or authority to operate locomotive and cars over
the tracks of the complainant. 2d. That it appears
from the cross-bill that the cross-complainants, if they
ever acquired or owned the rights of the Birmingham
Street Railway Company, have no right to operate en-
gines or locomotives or electric cars over said tracks,
except upon the payment of just compensation therefor.
3d. That it appears from the cross-bill that the cross-
complainants acquired no right to use said tracks, except
for horse cars. This demurrer was overruled.

Upon the final submission of the cause, upon the
pleadings and proof, the chancellor decreed that the
complainant was entitled to the relief prayed for, so far
as to have compensation for the use of said railroad
tracks, which was unpaid, according to the terms and
stipulations of the contract, and ordered a reference to
ascertain the amount due. The contract referred to in
the decree is set out at length in the opinion. The com-
plainant appeals, and assigns as error the decree over-
ruling its demurrer to the cross-bill and the rendition of
the final decree.

ALEX. T. LONDON, for appellant.—The bill is filed
upon the theory that a court of chancery will restrain
the use by a railroad company of the property of another,
until compensation is paid, where entry was lawful or
permissive. The bill concedes the right of the defend-
ants to use these tracks upon the payment of compensa-
tion, and this principle is well established in Alabama.
*Thornton v. S. & B. Ala. R. R. Co.*, 84 Ala. 109 ; *Cooper
v. A. & A. R. R. Co.*, 85 Ala. 106.

An injunction will lie to prevent the breach of an
agreement where two railroads are operating a line under
contract.—2 High on Injunctions, § 1111. And relief
will be allowed even if the relation of landlord and
tenant exists, as in the case of a bridge.—*Niagara, &c.,
Co. v. Great West. Railway Co.*, 39 Barb. 212. This whole
doctrine has been recently discussed and established by
the Supreme Court of the United States.—*Joy v. St.
Louis*, 138 U. S. 1 ; *Railway Co. v. Railway Co.*, 47 Fed.

Rep. 15; *Ib.* 51 Fed. Rep. 309; *S. & N.. Ala. R. R. Co. v. H. A. & B. R. R. Co.,* 98 Ala. 400.

. An injunction will lie to restrain one railroad company from interfering with the use of its tracks by another, under an agreement.—1 High on Injunctions, § 608; *Great Northern R. Co. v. Manchester, &c. Co.,* 5 DeG. & Sm. 138; *Same v. Lancashire, &c. Co.,* 1 Sm. & G. 81.

And in a contest as to the right to the use of a street, the company in possession may be protected by injunction.—1 High on Injunctions, § 609; *N. O., &c. R. R. v. Miss.; &c. R. R.,* 36 La. Ann. 561.

Where, owing to the peculiar character of the property in question, the trespass can not be adequately compensated for, and the remedy at law is plainly inadequate, an injunction will lie to prevent the trespass, and so for a continuing trespass.—1 High on Injunctions, § 697; *Poughkeepsie Gas Co. v. Citizens Gas Co.,* 89 N. Y. 493.

WALKER, PORTER & WALKER, *contra.*—The contract that was made by and between the Elyton Land Company and the Birmingham Street Railroad Company on the 18th day of July, 1885, fixes and determines the compensation to be paid for the use of these tracks. Under this contract the defendants claim the right to use the tracks built by the complainant, upon the terms as fixed therein.—Elliott on Streets & Roads, 560; *Birmingham, &c. S. R. Co. v. Birmingham S. R. Co.,* 79 Ala. 467; *Ricketts v. Birmingham S. R. Co.,* 85 Ala. 600; *Birmingham Min. R. R. Co. v. Jacobs,* 92 Ala. 187; *Ensley R. Co. v. Chewning,* 93 Ala. 24.

COLEMAN, J.—The Mayor and Aldermen of Birmingham granted to the Elyton Land Company, a corporation, the franchise and right to construct a double street car track along the center of First avenue from Nineteenth street to Twenty-second street, under the covenant and agreement of the Elyton Land Company "that in case any other street railroad company should desire the use of the former's track on First avenue between Nineteenth street and Twenty-second street, such user shall be granted, upon the payment of a just, fair and usual compensation, such as is generally paid under like circumstances in other cities, such user to be enjoyed with the usual restrictions and limitations." The agree-

ment between the Elyton Land Company and the Mayor and Aldermen,. among others, contained the following covenant: "And said Elyton Land Company further agrees to furnish said street car line with first-class street cars and equipment, and to have cars running upon the same within six months from the date hereof. Said cars are to be drawn by horses, mules or steam locomotives, as said Elyton Land Company may prefer, and if an engine be used the same must be enclosed to resemble street cars, with glass sash" etc. This agreement bears date April-24th, 1885. The bill avers a compliance in all respects by the Elyton Land Company with the terms and covenants entered into with the Mayor and Aldermen of the city of Birmingham, and that complainant, the Highland Avenue & Belt Railroad Company, succeeded to all the rights and privileges of the Elyton Land Company. The bill then avers that respondents are running locomotives and engines over and along its double tracks between Nineteenth and Twenty-second streets without paying or offering to pay, and refuses to pay, a reasonable and just compensation for such. user of its tracks. The complainant avers that it is willing for such use, upon payment of what is fair and reasonable. The prayer of the bill is for a temporary injunction and reference to the register to ascertain and report what would be a fair and just compensation for the use of the tracks, and for an order requiring its payment or satisfactory security for its payment.

For answer to complainant's bill, the respondents state that they have always been ready and willing to pay complainant what is justly due for the use of complainant's tracks, but aver that complainant has demanded and continues to demand a much greater amount than is justly due. The defense of respondents is founded upon a contract and agreement made and entered into between the Elyton Land Company, complainant grantor, and the Birmingham Street Railway Company on the 18th of July, 1885, prior to the succession of complainant to the rights of the Elyton Land Company. That agreement is made exhibit A to the answer, and is as follows: "Whereas there are now suits and differences pending by and between parties hereto, as to the right of the Elyton Land Company to construct and operate a Street R. R. on and over First

avenue as fully described hereafter, now for a full and complete settlement of the differences existing in said matter, it is agreed as follows :

"1st. That the Elyton Land Co. will at once, or as soon as practicable, construct a double track of Street R. R. of the gauge as now used by the party of the second part upon and over the following : Beginning at Nineteenth street and First avenue, North, to run East along the center of First avenue, to Twenty-second street ; thence South across a bridge, to be constructed by the party of the first part, to Avenue 'E' South, the said track to be double track of thirty pound rails.

"2d. It is further agreed and understood that the said double track shall be for the joint use of both parties for the running of their cars on same ; that the cars of each are to be run and operated as not to interfere with the schedule of each other ; the party of the first part or assigns are to bear all expenses in keeping the tracks in good repair and condition ; the party of the second part or its assigns are to pay the party of the first part for the use of said track as follows : Ten (10) per cent on one-half of the original cost of that part or portion of said track including the bridge, used by the party of the second part or its assigns ; payments to begin from the time said party of the second part or assigns shall begin to use said track or tracks, and to cease when the said party of the second part shall cease to use the same ; payments to be made monthly. It is agreed and understood that if the management of said party of the second part shall at any time deem it necessary to discontinue for a time the use of said track or any portion of the same, then the payments shall cease till the use is resumed, which right to be resumed is hereby understood to exist.

"It is further agreed and understood that the Birmingham Street Railway Company or assigns shall at all times have the right to connect any part of its line or track with the track or tracks constructed by said Elyton Land Co. as aforesaid.

"It is further agreed and understood that the said Elyton Land Company shall have the right to connect the said tracks at First avenue and Nineteenth street with the present track of the Birmingham Street Railway Co., for the purpose and only for the purpose of the

said two companies, turning or reversing cars or engines; provided, however, the said connection shall be made at the cost of said Land Co., and provided further that the turning or reversing of the cars of said Land Co. at said point, shall not interfere with the cars of the Birmingham Street Railway Co.; that is to say the Birmingham Street Railway Co. shall have an unobstructed passage for its cars running along its present line.

"It is further agreed and understood that the above is a full settlement of the differences now existing between the parties hereto, and it is agreed and understood that all suits, appeals and proceedings now pending are to be dismissed, and all claims for damages growing out of the same shall be, and the same are, hereby discharged, and each party pays its own costs.

"Provided, however, that this agreement shall not be construed as affecting the rights of either party in any future question or litigation, but is meant and intended as a settlement of matters now pending."

The respondents aver that they have succeeded to the rights of the Birmingham Street Railway Company, and that they are indebted only as stipulated in this agreement. The answer is made a cross-bill; a reference is asked for, that the amount due under the agreement may be ascertained; and respondents aver a readiness to pay the same.

By the answer to respondents' cross-bill it is averred, that when the agreement of July 18th, 1885, was entered into between the Elyton Land Company and the Birmingham Street Railway Company, both corporations were using only street cars drawn by horses; that for such street cars, rails of thirty pounds were ample; that the cost of construction of the track of thirty pound rails was about $2,176, and that on account of increased travel and public demand it became necessary to substitute steam and electricity for the horse car, and complainants reconstructed their track and substituted rails weighing 50 or 56 pounds, at a cost of nine thousand dollars; that the reconstruction was necessary, and the expenditure reasonable. It is shown and respondents admit that they have abandoned the horse cars and are using steam engines and electricity for drawing their cars upon complainant's track, but claim that under the agreement of July 18th, they can not be required to pay

more than the original cost of laying the track with thirty pound rails.

Though there is much pleading and a great deal of evidence, this is the real issue of merit between the litigants. We think it clear that if the respondents had continued the use of horse cars, and the Elyton Land Co. had constructed the more expensive tracks for its own interests, it would not be justified in charging a greater rate than that provided in the agreement. Suppose the Elyton Land Company or complainant, had found street cars drawn by horses ample for its business and had continued the use of such cars without a change of the track, and respondents had substituted engines to draw their cars over and upon the track constructed of thirty pound rails, could they compel the complainant to keep in repair the track for their use according to the agreement, and receive only the compensation provided by the agreement?

The evidence shows quite satisfactorily that the cost of keeping in good repair a track of thirty pound rails, for the use of dummy engines and locomotives along First avenue with the avenues and streets paved as they are, would be well nigh ruinous. We recognize the principle to its fullest extent, that courts can not make contracts for parties, and we have not overlooked the provision in the agreement which provides that "The Elyton Land Company shall have the right to connect the said tracks at First avenue and Nineteenth street with the present track of the Birmingham Street Railway Company for the purpose and only for the purpose of the said two companies turning or reversing cars or engines ; provided, however, the said connection shall be made at the cost of the said Land Company, and provided further that the *turning or reversing of the cars* of the said Land Company at said point, shall not interfere with the cars of the Birmingham Street Railway Company ; that is to say, the Birmingham Street Railway Company shall have an unmolested passage for its cars running along its present line." We do not interpret this provision to confer any right or privilege upon the respondents, but it was inserted wholly for the benefit of the Elyton Land Company. At that time the Birmingham Street Railway Company owned and was operating a horse car line from First avenue along Nine-

teenth street to Second avenue. The insertion of the provision authorized The Elyton Land Company to connect with this line, only for the purpose of turning its cars or engines, and even this privilege had to be used in such a manner as not to interfere with the unobstructed passage of the cars of the Birmingham Street Railway Company. This was the purpose and meaning of the provision, and it has no reference to the rights of the respondents acquired under the contract to use the tracks of the Elyton Land Company.

While it is not permissible to vary, add to or alter a written contract, by parol, it is legitimate and often necessary to consider the situation of the parties and existing circumstances in order to get at the intention of the parties and the true meaning of a contract. The rule is well stated in *Pollard v. Maddox,* 28 Ala. 320, in the following language : "Contracts must be interpreted in the light of surrounding circumstances. The occasion which gives rise to them, the relative position of the parties, and their obvious design as to the objects to be accomplished must be looked at, in order to arrive at their true meaning, and to enable the court to carry out their intention, if lawful." The same principle is recognized in *Tenn. & Coosa R. R. Co. v. East Ala. Railway Co.,* 73 Ala. 426 ; *Williams v. Glover,* 66 Ala. 189.

Applying these rules of interpretation, our conclusion is, that when the agreement of July, 1885, was made, the parties had in view a continuation of such use of the tracks as was then in operation, and for which rails of thirty pounds weight were suitable, and that there was no concurrence of mind as to the contingency, that if the interest of both parties subsequently required the substitution of engines for mere horse power, which would necessitate more than a quadrupling of expense in constructing and keeping in repair the tracks, the compensation, notwithstanding, should remain the same. This view neither adds to nor varies the written agreement; and accords with equity and good conscience.

The mayor and board of aldermen of Birmingham granted to the Elyton Land Company the right to construct its double track upon consideration that the latter "agreed that if any other street railroad company should desire the use of the former's tracks on First avenue between Nineteenth and Twenty-second street, such user

[Highland Ave. & B. R. R. Co, v. Birmingham Un. Rwy. Co. *et al.*]

shall be granted, upon the payment of a just, fair and usual compensation," etc. We find nothing in the facts of the case to exclude the respondents from the benefit of this provision, and complainant's bill seems to concede the right upon the payment of such compensation.

In their brief appellees do not question the equity of complainant's bill, the whole controversy on their part being rested upon a right growing out of the contract between the Elyton Land Company and the Birmingham Street Railway Company.—*Thornton v. S. & B. R. R. Co.*, 84 Ala. 109; *Cooper v. A. & A. R. R. Co.*, 85 Ala. 106; *S. & N. A. R. R. Co. v. H. A. & B. R. R. Co.*, 98 Ala. 400; 1 High on Inj., § 608.

We are of opinion the court has no power to fix the rate of compensation to be paid in the future. That must be determined by the agreement of the parties. It may, however, ascertain and decree payment for past uses, and enforce payment, if it becomes necessary to do so, by its restraining power, a power which under the facts of the case should not be exercised unless it becomes necessary in order to enforce its own decree.

The decree of the chancery court is reversed and annulled, and it is ordered and decreed, that complainant is entitled to relief. The register will hold a reference according to the rules of the court, and ascertain and report what compensation should be paid to complainant, according to the principles of law declared in the opinion.

It is decreed that cross-complainants are not entitled to relief under their cross-bill, and as a cross-bill for affirmative relief the same is dismissed out of court.

Reversed, rendered and remanded.