6 F.3d 1465
 Paul Charles WESCH, Plaintiff-Appellee,
Michael Figures; Charles Steele; Garria Spencer,
Intervenors-Plaintiffs-Appellants,
Darryl Sinkfield; Quinton Ross; Bernest Brooks; Rubin
McKinnon; Andrew Hayden, Intervenors-Plaintiffs-Appellants,
v.
James E. FOLSOM, Jr., Governor, State of Alabama; James H.
Evans, Attorney General; Jim Bennett, Secretary of State;
Lionel W. Noonan, Probate Judge; Harry D'Olive, Probate
Judge; Devon Wiggins, Probate Judge; Otha Lee Biggs,
Probate Judge; Jerry Bogan, Probate Judge; Clarence
Watters, Probate Judge; Tom W. Turner, Probate Judge, all
sued in their official or representative capacities only, Defendants,
Alabama Democratic Party, Movant.
 No. 93-6607.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 27, 1993.
 
 Gregory B. Stein, Mobile, AL, for D. Sinkfield, et al.
 J.L. Chestnut, Jr., Selma, AL, for M. Figures, et al.
 Armand Derfner, Charleston, SC, for Sinkfield, et al.
 Mortimer P. Ames, Robert Marcus Givhan, Courtney W. Tarver-Office of the Atty. Gen. of Alabama, Governor James Folsom and Karen Neal Herrod, Montgomery, AL, for defendant Jim Bennett.
 Ferrell S. Anders and David A. Boyett, III, Hamilton, Butler, Riddick, Tarlton & Sullivan, P.C., Mobile, AL, for Paul Charles Wesch.
 Appeals from the United States District Court for the Southern District of Alabama.
 Before ANDERSON and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.
 DUBINA, Circuit Judge:
 
 
 1
 Appellants, Darryl Sinkfield, et al. ("Sinkfield"), representatives of a class consisting of all African-American citizens of Alabama, appeal the district court's judgment enjoining them from proceeding with congressional redistricting claims filed in the Circuit Court of Montgomery County, Alabama. We affirm.
 
 I. PROCEDURAL HISTORY
 
 2
 This litigation began on September 23, 1991, when Appellee Paul C. Wesch ("Wesch") brought suit in the United States District Court for the Southern District of Alabama against the Governor of Alabama and other state officials. Wesch alleged that Alabama's congressional districts were unconstitutionally malapportioned and he sought an injunction prohibiting elections under the existing districts and establishing a remedial redistricting plan. Pursuant to 28 U.S.C. Sec. 2284, a three-judge panel was convened to hear the case.
 
 
 3
 On December 4, 1991, Appellants Michael Figures and Joseph Mitchell ("Figures") moved to intervene on behalf of themselves and all qualified electors who were African-American residents of Alabama ("African-American Intervenors"). Figures's complaint in intervention alleged that Alabama's existing congressional districts violated Section 2 of the Voting Rights Act, 42 U.S.C. Sec. 1973, because they did not "allow for the election of an African-American to Congress from the State of Alabama." (R-2, Doc. 39). The district court granted Figures's motion to intervene and certified the intervenors as a class represented by Figures.
 
 
 4
 At trial the parties, including the African-American Intervenors, stipulated that the remedial redistricting plan should include a single-member significant majority (65% or more) African-American congressional district. Wesch v. Hunt, 785 F.Supp. 1491, 1493-94, 1498 (S.D.Ala.1992). The parties submitted six proposed redistricting plans to the district court. One of the plans, the Hilliard Plan, contained two majority African-American districts. Neither of those districts, however, would have achieved a 65% or greater African-American majority as called for by the stipulation. "Although [the Hilliard Plan] was submitted by the [African-American] intervenors, they took the position that [it] probably provided obstacles of sufficient nature to cast doubt on their opportunity to elect candidates of their choice in these districts." Id. at 1496.
 
 
 5
 On March 9, 1992, the district court entered its final judgment. The court (a) declared Alabama's existing congressional districts unconstitutional, (b) enjoined the holding of any further elections under the existing districts, and (c) ordered that congressional elections be held according to the 1992 Alabama Redistricting Plan, both in 1992 and in later years, until "the Alabama Legislature duly enacts a redistricting plan and has the same precleared in accordance with federal law in time for congressional elections to proceed without delay under then applicable state and federal law." Id. at 1501-02. The 1992 Alabama Redistricting Plan adopted by the court, which was essentially the plan proposed by Wesch, created one single-member significant majority African-American district with an African-American population of 67.53%. The district court stated that because the parties agreed in their stipulation to the creation of a single-member significant majority African-American district, it did not need to decide whether Section 2 of the Voting Rights Act required the creation of such a district in Alabama at that time. Id. at 1499.
 
 
 6
 At the time of the district court's final judgment, the Alabama Legislature had enacted a congressional redistricting plan that had not yet been precleared by the Attorney General pursuant to Section 5 of the Voting Rights Act. The legislature's plan also contained one majority African-American district. On March 27, 1992, the Attorney General refused to preclear the legislature's plan because it failed to explain why a second majority African-American district was not created. The African-American Intervenors then filed a Rule 60(b) motion requesting that the district court modify its plan to include a second majority African-American district. The district court denied the motion. On appeal, the Supreme Court summarily affirmed the district court's refusal to modify its plan. Figures v. Hunt, --- U.S. ----, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993).[1] In the meantime, the 1992 congressional elections were held according to the district court's original 1992 Alabama Redistricting Plan.
 
 
 7
 Subsequently, Sinkfield filed a class action suit seeking legislative redistricting in the Circuit Court of Montgomery County, Alabama[2] on behalf of himself and as the representative of a class composed of all African-American citizens of Alabama ("the Sinkfield class"), the same class represented by Figures in Wesch v. Hunt. On February 23, 1993, the Supreme Court decided Growe v. Emison, --- U.S. ----, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993). On April 5, 1993, the Sinkfield class amended its complaint to include Congressional redistricting claims. The Sinkfield class's amended complaint asserted that the Alabama Legislature's failure to redraw Alabama's congressional districts deprived it of certain rights guaranteed under the Alabama and United States Constitutions and Section 2 of the Voting Rights Act[3] and requested that the state court implement a redistricting plan of its own. The apparent basis for these claims is that Alabama has only one majority African-American congressional district. The Sinkfield class, maintaining that Growe v. Emison declared state courts to be the virtual equivalent of state legislatures in redistricting matters, urged the state court to read the three-judge district court's injunction in Wesch as "encouraging congressional redistricting by the Government of Alabama, that is, by both the legislative and judicial branches." In effect, the Sinkfield class asked that the 1992 Alabama Redistricting Plan approved by the federal panel be replaced by a plan approved by the Alabama state court.
 
 
 8
 Wesch then moved the district court to stay the state court proceedings, to the extent that they related to congressional redistricting, pursuant to the All-Writs Act, 28 U.S.C. Sec. 1651, and the provisions of the Anti-Injunction Act, 28 U.S.C. Sec. 2283, that specifically empower a federal court to enjoin state court proceedings in aid of its jurisdiction or to protect or effectuate its judgments. On July 13, 1993, the district court granted Wesch's motion and enjoined any further proceedings in the state court case with regard to congressional redistricting. The district court explained that it was simply enforcing the order of the three-judge district court "enjoin[ing] the conduct of any congressional election after 1992 held pursuant to a plan other than the 1992 Alabama Redistricting Plan adopted by this court except in the event 'the Alabama Legislature duly enacts a redistricting plan and has the same precleared in accordance with federal law in time for congressional elections.' " Wesch v. Hunt, No. 91-0787, 1993 WL 468747 (S.D. Ala. July 13, 1993) (emphasis added). The district court rejected the argument that Growe v. Emison required it to allow the parties to proceed with their congressional redistricting suit in state court, stating that
 
 
 9
 Growe does not stand for the proposition that a State court is a co-equal branch of government with respect to overturning a districting plan enacted by a federal court and affirmed on appeal by the United States Supreme Court prior to any effort by such state court to address any issue relating to reapportionment and redistricting. By contrast, Growe stands only for the proposition that "[i]n the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative or judicial branch, has begun to address that highly political task itself."
 
 
 10
 Id., quoting Growe v. Emison, --- U.S. at ----, 113 S.Ct. at 1080. The Sinkfield class timely appealed to this court. On August 13, 1993, this court granted a stay of the district court's injunction pending this appeal.
 
 II. STANDARD OF REVIEW
 
 11
 The grant of an injunction is reviewed for abuse of discretion. Centel Cable Television Co. v. Thos. J. White Dev. Corp., 902 F.2d 905, 910 (11th Cir.1990); United States v. Alabama, 791 F.2d 1450, 1458 (11th Cir.1986); United States v. Board of Ed., 332 F.2d 40, 45-46 (5th Cir.1964).[4] However, if the trial court misapplies the law we will review and correct the error without deference to that court's determination. Guaranty Fin. Servs., Inc. v. Ryan, 928 F.2d 994, 998 (11th Cir.1991); Tally-Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1022 (11th Cir.1989).
 
 III. DISCUSSION
 
 12
 The question of whether to stay proceedings in a state court is never one to be taken lightly, as it impinges on the very delicate balance struck between the federal and state judicial systems. Although district courts have been warned to be hesitant in enjoining state litigation, see Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), the decision of whether to take such action remains one of discretion for the district court. Delta Air Lines, Inc. v. McCoy Restaurants, Inc., 708 F.2d 582, 587 (11th Cir.1983) ("Within the limits of that discretion, a district court in a given case might go either way and not be reversed.").
 
 
 13
 The district court here based its injunction on the long recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance and thereby avoid relitigation of questions once settled between the same parties. See Root v. Woolworth, 150 U.S. 401, 411-412, 14 S.Ct. 136, 138-39, 37 L.Ed. 1123 (1893); Hamilton v. Nakai, 453 F.2d 152 (9th Cir.1971), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972). This equitable power has been codified by Congress in the All-Writs Act, 28 U.S.C. Sec. 1651.[5] Hamilton, 453 F.2d at 157. The All-Writs Act gives federal courts the power to issue injunctions in aid of their jurisdiction. In addition, courts hold that despite its express language referring to "aid of ... jurisdiction," the All-Writs Act also empowers federal courts to issue injunctions to protect or effectuate their judgments. See Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 985 F.2d 1067, 1069 (11th Cir.1993); Kinnear-Weed Corp. v. Humble Oil & Ref. Co., 441 F.2d 631, 637 (5th Cir.), cert. denied, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971); Ward v. Pennsylvania New York Cent. Transp. Co., 456 F.2d 1046, 1048 (2nd Cir.1972); Olin Corp. v. Insurance Co. of North America, 807 F.Supp. 1143, 1152 (S.D.N.Y.1992).
 
 
 14
 In contrast to the broad powers granted to federal courts by the All-Writs Act, the Anti-Injunction Act, 28 U.S.C. Sec. 2283[6] prohibits federal courts from enjoining state court proceedings with three limited exceptions. The two exceptions relevant to this case allow a federal court to enjoin a state court proceeding: (1) when necessary in aid of its jurisdiction, and (2) to protect or effectuate its judgments. Because we are persuaded that the district court's injunction was necessary both in aid of its jurisdiction and to protect and effectuate its prior judgment, we hold that the district court did not abuse its discretion by enjoining the proceedings in the Montgomery County Circuit Court.
 
 A. In Aid of Jurisdiction
 
 15
 The United States Supreme Court recognizes that a federal court injunction of state court proceedings is necessary in aid of jurisdiction when necessary "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970). When a court issues an injunction, it automatically retains jurisdiction to enforce it. See, e.g. Suntex Dairy v. Bergland, 591 F.2d 1063, 1068 (5th Cir.1979); Plaquemines Parish Comm. Council v. United States, 416 F.2d 952, 954 (5th Cir.1969) ("Generally, a district court retains jurisdiction to enforce its prior orders ..."); United States v. Fisher, 864 F.2d 434, 436 (7th Cir.1988); McCall-Bey v. Franzen, 777 F.2d 1178, 1183 (7th Cir.1985); cf. 11 Wright & Miller, Federal Practice & Procedure Sec. 2961, at p. 599 (1973). In Battle v. Liberty Nat'l Life Ins. Co., 877 F.2d 877, 880 (11th Cir.1989), we held that a federal district court which entered a final judgment in a complex antitrust class action suit could enjoin in aid of its jurisdiction a later state court suit in which class members brought substantially similar claims. In reaching our decision, we held that the "necessary in aid of jurisdiction" exception is applicable both after the entry of a final judgment in federal court and to proceedings that are not in rem. Id. at 881. Moreover, we reasoned that a lengthy and complicated class action suit is the virtual equivalent of a res to be administered. Id. at 882.
 
 
 16
 The three-judge district court in the original Wesch litigation expressly ordered that its 1992 Alabama Redistricting Plan remain in effect until the Alabama Legislature replaced it with a valid plan. In enjoining the state court suit, the district court was merely exercising its continuing jurisdiction to enforce the order of the three-judge district court in Wesch. Like the district court in Battle, the three-judge district court in this case invested a great deal of time and other resources in the arduous task of reapportioning Alabama's congressional districts. In addition, both Battle and the Wesch case involved class actions. Like the state court plaintiffs in Battle, the Sinkfield class brought suit in state court asserting claims substantially similar to those already decided by the final judgment of the three-judge district court in Wesch. The Sinkfield class does not claim that the 1992 Alabama Redistricting Plan adopted by the three-judge district court in Wesch is in any way defective. Rather they erroneously[7] assert a right to a congressional redistricting plan adopted by a state rather than a federal court and seek to oust and replace the federal court plan. They claim that right exists although the federal court plan has been validated on appeal as constitutional, and although the plan they seek in state court has been considered and rejected in the federal court and the rejection validated on appeal. One election has occurred since the federal plan was adopted, but the Sinkfield class contended at oral argument in this appeal that their right to oust the federal plan and replace it with their previously-rejected plan would exist even if no election had occurred. To allow a system of redistricting at will would render all federal court redistricting plans, regardless of their validity, susceptible to immediate replacement by state court redistricting plans without any showing of change in circumstance or other reasons, and would effectively strip all federal courts of the ability to meaningfully redistrict. Thus the district court was justified in enjoining the state court suit in aid of its jurisdiction and did not abuse its discretion.
 
 B. To Protect or Effectuate Judgments
 
 17
 The "protect or effectuate its judgments" exception to the Anti-Injunction Act, also known as the "relitigation exception," is essentially a res judicata concept designed to prevent issues that have already been tried in federal court from being relitigated in state court. Woods Exploration & Prod. Co., Inc. v. Aluminum Co. of America, 438 F.2d 1286, 1312 (5th Cir.1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972). Because of the sensitive nature of federal interference with state court litigation, district courts require that parties requesting an injunction make a strong and unequivocal showing of relitigation. See G.M. Brod & Co., Inc. v. Adler, 845 F.2d 899, 900 (11th Cir.1988); Delta Air Lines, Inc. v. McCoy Restaurants, Inc., 708 F.2d 582, 585-86 (11th Cir.1983).
 
 
 18
 Federal courts apply the law of the state in which they sit with respect to the doctrine of res judicata. Under Alabama law, the essential elements of res judicata are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits. N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1560 (11th Cir.1990). If all these elements are met, any claim that was or could have been adjudicated in the previous action is precluded. Id. It is well-settled that "the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action." Id. at 1561. Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts. Id. at 1561.
 
 
 19
 In this case all four of the elements of res judicata are met. The three-judge district court in Wesch, a court of competent jurisdiction, issued a final judgment on the merits. The state court plaintiffs, the Sinkfield class, were members of the class of African-American citizens of Alabama represented by Figures in Wesch and thus were parties to that suit. Finally, both the federal suit in Wesch and the state suit in Sinkfield involve the same cause of action. In Wesch the plaintiffs attacked the then existing congressional districting scheme on the grounds that it violated the United States Constitution and section 2 of the Voting Rights Act. The three-judge district court in Wesch adopted a constitutional congressional redistricting plan that was twice upheld on appeal to the United States Supreme Court. In one of those appeals, the Supreme Court summarily affirmed the order of the district court denying the African-American Intervenors' post-judgment, Rule 60(b) motion that the district court modify its plan to include a second majority African-American district.
 
 
 20
 The thrust of the Sinkfield class's state court complaint is that they have a right to a second majority African-American district and to a congressional districting plan adopted by a state court rather than one adopted by a federal court. The federal court judgment in Wesch is clearly res judicata as to both of these claims. The question of the appropriate number of majority African-American districts was aired both in the original proceedings before the three-judge district court and in the subsequent Rule 60(b) motion, which the district court denied and which denial the Supreme Court affirmed. The Sinkfield class's claimed right to a state court plan arises from the same nucleus of operative facts as the claims adjudicated by the federal court in Wesch. In short, both the Wesch case and the Sinkfield case present the same cause of action.
 
 
 21
 The Sinkfield class contends that res judicata has only a limited application in congressional redistricting cases. While the question of how long, and under what circumstances, a valid federal court districting plan would be res judicata barring state courts from adopting a different plan is a thorny one, we need not address that question here because the Sinkfield class has failed to demonstrate any reason why the federal court judgment in Wesch would not be res judicata for purposes of this case.
 
 
 22
 Apart from the strict limitations imposed by res judicata, there are policies that militate against redistricting at will. The Supreme Court has made it clear that the policy interest of promoting stability in elections dictates against redistricting too frequently.
 
 
 23
 Limitations on the frequency of reapportionment are justified by the need for stability and continuity in the organization of the legislative system, although undoubtedly reapportioning no more frequently than every 10 years leads to some imbalance in the population of districts toward the end of the decennial period and also to the development of resistance to change on the part of some incumbent legislators. In substance, we do not regard the Equal Protection Clause as requiring daily, monthly, annual or biennial reapportionment, so long as a State has a reasonably conceived plan for periodic readjustment of legislative representation. While we do not intend to indicate that decennial reapportionment is a constitutional requisite, compliance with such an approach would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation.
 
 
 24
 Reynolds v. Sims, 377 U.S. 533, 583-84, 84 S.Ct. 1362, 1392-93, 12 L.Ed.2d 506 (1964). In addition, courts are reluctant to redistrict shortly before a new census, which might require yet another reapportionment. See White v. Daniel, 909 F.2d 99, 103 (4th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991); Maryland Citizens for a Representative Gen'l Assembly v. Governor of Maryland, 429 F.2d 606, 610 (4th Cir.1970). Reynolds indicates that certain shifts in population alone would not require a court to readjudicate the constitutionality of a reapportionment plan that was judicially determined to have been constitutional when adopted. 377 U.S. at 583-84, 84 S.Ct. at 1392-93. In any event, the district court in Wesch used 1990 census data, and the Sinkfield class has not alleged any shifts in population or any other change in circumstances since the adoption of the 1992 Alabama Redistricting Plan by the federal district court in Wesch. Some courts have held that an intervening change in the law, however, would justify readjudication of the constitutionality of a reapportionment plan, judicially determined to have been constitutional when adopted. See Whitcomb v. Chavis, 403 U.S. 124, 162-63, 91 S.Ct. 1858, 1878-79, 29 L.Ed.2d 363 (1971); Parnell v. Rapides Parish Sch. Bd., 563 F.2d 180, 185 (5th Cir.1977), cert. denied, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978).
 
 
 25
 The Sinkfield class asserts that the Supreme Court's recent decision in Growe v. Emison, --- U.S. ----, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993), constitutes an intervening change in the law negating the res judicata effect of the prior federal court judgment in Wesch. Specifically, the Sinkfield class argues that Growe declared state courts to be the equivalent of state legislatures in redistricting matters and that this court must therefore read the Wesch order as allowing either the Alabama state legislature or the Alabama state courts to adopt a valid redistricting plan supplanting the federal court's 1992 Alabama Redistricting Plan. We disagree.
 
 
 26
 Growe did not change the law. It merely reaffirmed the extant principle that federal judges should "defer consideration of disputes involving redistricting where the State, through its legislative or judicial branch, has begun to address that highly political task itself." Id. at ----, 113 S.Ct. at 1080 (emphasis in original). In Growe, original redistricting suits were simultaneously pending in both federal and state courts. Neither court had previously adopted a valid redistricting plan or determined the validity of the existing redistricting plan since the taking of the 1990 census. Although the state court was ready and able to adopt a redistricting plan in time for the upcoming elections, the federal district court in Growe enjoined the state court proceedings. On appeal, the Supreme Court held that the district court should have deferred to the pending state proceedings.
 
 
 27
 Growe requires deferral not abstention. Id. at 1082. Moreover, Growe does not empower state courts to preempt federal court judgments. Once it is apparent that a state court, through no fault of the district court, will not develop a redistricting plan in time for an upcoming election, Growe authorizes a federal district court to go ahead and develop a redistricting plan. See id.
 
 
 28
 In contrast to the facts of Growe, at no time prior to the entry of final judgment by the federal district court was a similar redistricting suit initiated in any Alabama state court. In the absence of any state suit to which it should defer, the federal district court properly undertook the complex task of redistricting. Once a federal court enters a final judgment adopting a valid redistricting plan, nothing in Growe vitiates the res judicata effect of that judgment.[8]
 
 
 29
 In Growe there was an unseemly race for judgment between state and federal courts, and the federal court had ordered the state court out of the race. There is no such race in this case. The Sinkfield class has been to the federal courthouse and has lost. That decision was summarily affirmed by the Supreme Court. The Sinkfield class's effort to modify the federal court order under Rule 60(b) was likewise rejected by the district court and summarily affirmed by the Supreme Court. Now, with no showing of any defect in the existent redistricting plan or change in circumstances, or even such expiration of time as arguably might cast doubt on the current correctness of the plan, and in violation of the stipulation in which they joined in the federal case, the Sinkfield class seeks in state court to oust the existent plan and to replace it with a plan that follows their repeatedly-rejected proposals. Growe does not authorize this redistricting on demand, done without reasons.
 
 
 30
 In its final judgment the three-judge district court in Wesch ordered that its 1992 Alabama Redistricting Plan remain in effect until the Alabama Legislature enacts a valid plan. The Sinkfield class's request that the state court now adopt its own congressional redistricting plan is contrary to the clear language of the district court's order. The district court's injunction of the state court proceedings was thus necessary to protect and effectuate its judgment and was not an abuse of its discretion.
 
 IV. CONCLUSION
 
 31
 The judgment of the district court enjoining any further proceedings in the case of Sinkfield v. Camp, currently pending in the Circuit Court of Montgomery County, Alabama, is necessary both in aid of its jurisdiction and to effectuate its prior final judgment and is not an abuse of the district court's discretion. Accordingly, we affirm the judgment of the district court.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 In a previous appeal, in which the Alabama Secretary of State argued that the district court erred in not adopting the plan enacted by the Alabama Legislature, the Supreme Court also summarily affirmed the district court. Camp v. Wesch, --- U.S. ----, 112 S.Ct. 1926, 118 L.Ed.2d 535 (1992)
 
 
 [2]
 Sinkfield v. Camp, Civil Action No. 93-689 (Cir.Ct. Montgomery County)
 
 
 [3]
 Specifically, the Sinkfield class claimed that the Alabama Legislature's failure to redraw Alabama's congressional districts deprived them of (a) their rights to equal protection of the laws guaranteed by Section 1 of the Constitution of Alabama, (b) their one-person-one vote rights not to have their votes diluted or underweighted on account of their place of residence as guaranteed by the Equal Protection Clause of the Fourteenth Amendment and Article I, Section 2 of the United States Constitution, (c) their rights not to have their federally protected right to vote denied or abridged on the basis of their race or ethnicity as guaranteed by the Fourteenth and Fifteenth Amendments and Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. Sec. 1973, and (d) their rights not to have their electoral strength diluted or minimized as guaranteed by Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. Sec. 1973
 
 
 [4]
 The decisions of the United States Court of Appeals for the Fifth Circuit rendered by that court prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981)
 
 
 [5]
 Section 1651(a) provides:
 The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
 
 
 [6]
 Section 2283 provides:
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 [7]
 See discussion of Growe v. Emison, infra
 
 
 [8]
 We note one additional respect in which this case is different from Growe. In Growe both the state and federal courts had undisputed jurisdiction to adopt a redistricting plan. In this case there is some question as to whether the Alabama state courts have the power under Alabama law to adopt a redistricting plan. We note that a three-judge federal district court in the case of Brooks v. McKinnon, No. 92-T-364-N (M.D.Ala.1993), recently certified this precise question to the Alabama Supreme Court. To the extent that the Alabama state courts may lack jurisdiction to decide redistricting cases, the district court's injunction in this case is further justified