[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13648
Non-Argument Calendar
_____

D.C. Docket No. 2:15-cv-00086-SPC-DNF


BRYAN O. CRANE,

Plaintiff-Appellant,

versus

SECRETARY OF LABOR,
THOMAS E. PEREZ,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 29, 2017)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Bryan O. Crane, proceeding *pro se*, appeals the district court's dismissal of his complaint challenging suspensions and reductions in his Federal Employees' Compensation Act ("FECA") benefits.  The district court dismissed Crane's complaint as barred by res judicata and, alternatively, for lack of subject-matter jurisdiction.  After careful review, we affirm the dismissal of Crane's complaint.

## I.  BACKGROUND

### A.    *Federal Employees' Compensation Act*

This appeal broadly relates to Crane's long-term dispute with the Secretary of Labor (the "Secretary") about the handling of his benefits under FECA, so we begin by explaining this Act and federal courts' limited jurisdiction over these matters.

FECA is a comprehensive workers' compensation scheme for federal civilian employees who are injured or killed while performing their work duties. *Noble v. United States*, 216 F.3d 1229, 1234 (11th Cir. 2000).  FECA is also "the federal employee's exclusive remedy against the federal government for on-the-job injuries."  *Id.*  Under FECA, "employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government."  *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983).

2

Central to the FECA's statutory scheme is the Secretary, who has the authority to administer and decide all questions arising under the FECA. *Noble*, 216 F.3d at 1234. The Secretary has delegated responsibility for FECA's administration and implementation to the Director of the Department of Labor's Office of Worker's Compensation Programs ("OWCP"). *Id.* Determinations and awards by OWCP with respect to claims of employees can be appealed to the Employees' Compensation Appeals Board ("ECAB"), an appellate arm of the Department of Labor. 5 U.S.C. § 8149; *Woodruff v. U.S. Dep't of Labor, Office of Workers Comp. Programs*, 954 F.2d 634, 637 (11th Cir. 1992). The Secretary retains the ability to review an award for or against payment of benefits at any time on his own motion, or by application. 5 U.S.C. § 8128(a).

However, FECA closes the door to judicial review of the Secretary's decision to award or deny coverage under FECA. 5 U.S.C. § 8128(b)(2); *Woodruff*, 954 F.2d at 637, 639. "Conclusions of law and fact made by the Secretary or the ECAB are also immune from judicial review." *Woodruff*, 954 F.3d at 637.

Nevertheless, we have recognized two potential instances in which a federal court may exercise jurisdiction in matters arising under FECA: (1) a clear statutory mandate has been violated; or (2) a colorable constitutional claim exists. *See id.* at 639. Even if § 8128(b) does not bar review, however, a claimant cannot recover

3

money damages or obtain substantive relief on issues within the exclusive authority of the Secretary. *See Czerkies v. United States Department of Labor*, 73 F.3d 1435, 1439 (7th Cir. 1996) (*en banc*) ("The circuits are in agreement: door-closing statutes [like § 8128(b)] do not, unless Congress expressly provides, close the door to constitutional claims, provided that the claim is colorable and the claimant is seeking only a new hearing or other process rather than a direct award of money by the district court."); *see also Raditch v. United States*, 929 F.2d 478, 481 (9th Cir. 1991) ("A violation of procedural rights requires only a procedural correction, not the reinstatement of a substantive right to which the claimant may not be entitled on the merits.").

## B.    *Underlying Facts*

In 2000, Crane, an accountant with the United States Department of Navy, suffered a work-related spinal injury which left him permanently disabled. Based on his injury, he successfully filed a claim for benefits under FECA.

In 2003, however, a question arose over whether Crane was totally disabled from work, and OWCP referred him for an independent medical examination. The medical examination indicated that Crane could perform light-duty work, and he was offered a light-duty assignment. Crane refused the assignment and instead appealed to ECAB, which found in Crane's favor and awarded retroactive compensation.

In February 2009, OWCP scheduled another medical examination and told Crane that refusing to attend would result in suspension of his benefits. Crane did not attend the exam and instead told OWCP he believed it was inappropriate to require him to undergo additional medical examinations. OWCP suspended his benefits in April 2009. Crane again appealed to ECAB, which found that OWCP had properly suspended his FECA benefits. Thereafter, Crane elected to receive his disability retirement benefits from the United States Office of Personnel Management.

In December 2011, OWCP reconsidered its decision to suspend Crane's FECA benefits, decided the suspension was erroneous, and awarded him payment for benefits lost from April 2009 to February 2011. He therefore elected to receive FECA benefits in lieu of his retirement benefits. Crane did not receive the retroactive benefits payment until February 2013.

Thereafter, Crane sought to expand his FECA benefits to include additional treatments for his disability. Specifically, Crane sought reimbursement for chiropractic services to correct a "spinal subluxation." OWCP issued several decisions denying his claims. When OWCP denied his request for reconsideration, he appealed to ECAB. In June 2013, ECAB affirmed OWCP's decision to deny his claim and his request for reconsideration.

5

In May 2013, the Office of Personnel Management notified OWCP that Crane owed over $35,000 in retirement benefit overpayments, and it asked OWCP to make deductions from his FECA payments until the amount that had been overpaid was repaid in full. After Crane requested review of that decision, the Office of Personnel Management told OWCP to suspend making deductions. At that time, OWCP had made one deduction of around $500.

## C.    In 2013, Crane Sues United States and Secretary of Labor

Crane filed suit against the United States in July 2013, broadly challenging the allegedly unfair and unlawful handling of his benefits under FECA from the time he began receiving benefits.[1] Crane advanced the following "issues": the Department of Labor (a) forced him to submit to unnecessary and unreasonable medical examinations; (b) repeatedly and illegally suspended or reduced his FECA benefits; (c) refused to reimburse him for medical expenses allowed under FECA; (d) failed to investigate or correct misconduct and illegal behavior by OWCP and ECAB personnel; and (e) improperly deducted money from his FECA benefits to recover alleged retirement benefit overpayments.

For relief, Crane sought a declaration that he was totally and permanently disabled, as well as injunctive relief barring any future independent medical examinations and preventing OWCP from communicating with him except for the

---

[1]  It appears that Crane earlier filed another federal lawsuit challenging the actions of the Office of Personnel Management, but this suit was dismissed for failure to perfect service.

6

purpose of paying his disability benefits.  He also demanded money damages, including reimbursement of past and future medical expenses and an award of $100 million for financial, mental, and physical harm.

On the government's motion, the district court dismissed Crane's complaint for lack of subject-matter jurisdiction.  The court explained that FECA bars judicial review of the Secretary's decisions regarding FECA benefits, *see* 5 U.S.C. § 8128(b)(2), except where the plaintiff presents a colorable constitutional claim, *see Woodruff*, 954 F.2d at 639.  Because Crane did not allege a constitutional claim, the court dismissed his complaint.

Thereafter, the district court reopened the case and permitted Crane to file an amended complaint.  Crane did so.  Though largely identical to his initial complaint in its factual allegations and statement of the "issues," Crane's amended complaint framed his disputes with OWCP and ECAB in constitutional terms. Crane alleged that "FECA and the administration of FECA" deprived him of his rights to due process and equal protection because the "personnel assigned to carry out the law under FECA are lawless, corrupt, arrogant and abusive," and they often mischaracterize or ignore regulations and precedent, but "[t]here is no vehicle within FECA or the [Department of Labor] that allows Plaintiff to independently challenge illegal actions or abuses of position and power by personnel administering FECA."  He claimed that the Department of Labor's Office of

7

Inspector General was responsible for investigating such misconduct but that it refused to do so. He also alleged that his constitutional rights had been violated by FECA regulations governing legal representation, which make the claimant solely responsible for paying legal fees and require agency approval before attorneys can collect legal fees. These regulations, Crane asserted, made it impossible for him to find representation in the FECA process. Crane sought the same relief as he did in his initial complaint.

The district court again concluded that FECA barred judicial review of Crane's lawsuit. Surveying Crane's allegations of due process and equal-protection violations, the court concluded that Crane was simply attempting to reframe his grievances with the administrative process as constitutional violations. The court found that Crane was afforded full due process in the consideration of his FECA claims, that his requested relief went to the merits of his FECA claims and not the procedures by which those claims were adjudicated, and that he had not alleged any unequal treatment that could sustain an equal-protection claim. Accordingly, the court dismissed Crane's amended complaint "with prejudice."

## D.    *In 2015, Crane Again Sues Secretary of Labor*

Crane did not appeal the district court's dismissal of his 2013 lawsuit. Instead, Crane filed a new complaint against the Secretary of Labor in 2015, again arguing that his rights to due process and equal protection had been violated during

8

the FECA benefits process.  Noting that he had "previously filed" the complaint in 2013, Crane claimed that the court had jurisdiction over the new lawsuit because he was not challenging the constitutionality of the FECA process "as legislated," which he asserted was all that the court decided in the earlier case, but rather the constitutionality of the process "in application"—specifically the Department of Labor's failure to prevent its "universally corrupt" personnel from disregarding FECA law and regulations.

Despite Crane's attempt to differentiate the present complaint, however, it is largely indistinguishable from his amended complaint in the previous lawsuit. Crane's present complaint was based broadly on the handling of his FECA benefits since 2000, and he again alleged that the Department of Labor violated his rights by, among other things, requiring him to submit to medical examinations, improperly reducing or suspending his disability benefits, refusing to reimburse medical expenses, and improperly deducting money from his benefits.  He also reiterated his claims that his rights to due process and equal protection had been violated both by the Department of Labor's refusal to investigate misconduct of its personnel and by regulations that effectively deprived him of competent legal representation.  And except for a new request that the court declare the regulations on legal representation unconstitutional, Crane sought the same relief as he had in the previous lawsuit.

The district court granted the Secretary of Labor's motion to dismiss and dismissed the present complaint for two alternative reasons.  First, the court found that the complaint was barred by the doctrine of res judicata.  The court determined that res judicata applied because Crane's constitutional claims had been resolved on the merits by a court of competent jurisdiction in the 2013 lawsuit, that the parties to the present complaint were the same as the parties to the previous lawsuit, and that both cases arose out of the same operative nucleus of fact.

Second, the district court alternatively found that it lacked subject-matter jurisdiction because Crane failed once again to state a colorable constitutional claim to overcome FECA's jurisdictional bar.  The court concluded that Crane's claims, although couched as constitutional issues, were merely challenges to the decisions of the Secretary to suspend or deny coverage under FECA.  The court noted that Crane did not request any procedural remedy, such as a new hearing, but instead sought substantive relief.  Finding that his requests for relief confirmed that he was not seeking an opportunity to be heard at a meaningful time and in a meaningful manner, the court concluded that Crane was simply attempting to relitigate his FECA claims.  *See* 5 U.S.C. § 8128(b)(2); *Woodruff*, 954 F.2d at 637.  Accordingly, the court dismissed Crane's complaint.  Crane now appeals.

## II.  STANDARDS OF REVIEW

We review *de novo* the district court's application of the doctrine of res judicata. *Griswold v. Cty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010). We review *de novo* the district court's dismissal of a complaint for lack of subject-matter jurisdiction. *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010).

We liberally construe the filings of *pro se* parties. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Where a *pro se* litigant fails to raise a legal claim on appeal or raises an issue in a perfunctory manner, however, he abandons that claim, and we will not review it. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## III.  DISCUSSION

The doctrine of claim preclusion bars the filing of claims that were raised or could have been raised in an earlier lawsuit. *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990). When claim preclusion does not apply, the doctrine of issue preclusion "may still prevent the relitigation of particular issues which were actually litigated and decided in a prior suit." *Id.* Claim preclusion and issue preclusion are collectively referred to as "res judicata." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The purposes behind these doctrines are to protect against the expense and vexation of defending multiple lawsuits, to

11

conserve judicial resources, and to foster reliance on judicial decisions by minimizing the possibility of inconsistent results. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).

Claim preclusion applies if the following four elements are met: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the same cause of action is involved in both cases. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003). The Secretary of Labor asserts that all four requirements were met here because (1) the court had jurisdiction to consider constitutional claims regarding FECA, (2) the court's dismissal of Crane's complaint was based on the substantive shortcomings of his constitutional claims, *see id.* at 1189–90 (stating that we look to the substance of the court's dismissal, rather than the label it employs, in applying res judicata), (3) the parties were the same in both suits, and (4) both suits involved the same cause of action. Crane's brief, liberally construed, challenges the fourth requirement only. Accordingly, we conclude that Crane has abandoned any challenge to the other three requirements. *See Sapuppo*, 739 F.3d at 681.

Crane argues that the district court should have addressed his constitutional claims in the present complaint because they are distinct from the claims that he raised in his previous lawsuit. He argues that the court's prior decision "was

12

narrowly focused on challenges to FECA, FECA process, and FECA decision," which he now understands cannot be challenged in federal court. But nowhere in the court's prior order, Crane argues, did the court address the Department of Labor's refusal to investigate allegations of serious misconduct or his allegations regarding legal representation.

For purposes of claim preclusion, two cases are really the same "claim" or "cause of action" if they are based on the same "nucleus of operative facts" or are "based upon the same factual predicate." *Griswold*, 598 F.3d at 1293 (quotation marks omitted). As a result, claim preclusion "applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts." *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993). Therefore, the doctrine bars the filing of claims that were raised or could have been raised in an earlier proceeding. *Data Lease Fin. Corp.*, 904 F.2d at 1501.

Here, the district court properly found that both of Crane's lawsuits arose out of the same nucleus of operative facts. *See Ragsdale*, 193 F.3d at 1239. Both lawsuits are based on the same time periods, the same underlying events, and the same actions by the Department of Labor. Moreover, the "issues" Crane raised in both lawsuits are largely identical.

13

In the present lawsuit, like the previous lawsuit, Crane alleged that the Department of Labor had violated his rights by, among other things, requiring him to submit to medical examinations, improperly reducing or suspending his disability benefits, refusing to reimburse medical expenses, and improperly deducting money from his benefits. And except for a new request that the court declare the regulations on legal representation unconstitutional, Crane sought the same relief as he had in the previous lawsuit.

Because Crane's claims are based on the same nucleus of operative facts, claim preclusion operates to bar claims that were actually raised and claims that could have been raised before in an earlier proceeding. *Data Lease Fin. Corp.*, 904 F.2d at 1501. The constitutional claims that Crane alleged in his 2015 lawsuit—regarding both the Department of Labor's lack of oversight of its personnel and the FECA regulations governing fees for legal representation—were in fact raised in his previous lawsuit. And the district court resolved these claims in the earlier proceeding, concluding that they were simply an attempt to put a constitutional gloss on Crane's disagreements with various decisions regarding his FECA benefits. Whether the court was correct on that point is not at issue in this appeal. Crane could have, but did not, appeal the court's determination. In any case, even if Crane is correct that the legal theories he advanced in the new suit are different, claim preclusion "applies not only to the exact legal theories advanced in

14

the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts." *Wesch*, 6 F.3d at 1471

Accordingly, Crane has not shown that the district court erred in dismissing his complaint on the basis of res judicata. Therefore, we do not address the court's alternative determination that Crane did not allege a colorable constitutional claim that could evade FECA's jurisdiction bar. *See* 5 U.S.C. § 8128(b).

## IV.

For the reasons stated, we affirm the district court's dismissal of Crane's complaint.

**AFFIRMED.**